**Michael D. HOFMAYER, Plaintiff,**

v.

**DEAN WITTER & CO., INC., Mark Baraz, Charles A. Moskowitz, Thomas S. Rhoades, Linton D. Kingsbury, Rhoades and Associates, New Age Monetary Management, Inc., Defendants.**

**No. C–77–2808–WWS.**

United States District Court,
N. D. California.

Oct. 18, 1978.

---

Gary J. Lekas, Portland, Or., Robert B. Freedman, Wald & Freedman, Oakland, Cal., for plaintiff.

Jay R. Martin, William H. Waysman, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM W SCHWARZER, District Judge.

Plaintiff brings this action against Dean Witter & Co., two of its employees, and Thomas S. Rhoades and Linton D. Kingsbury. He alleges that in August 1976 he turned over to Witter some $66,000 to be used for trading in commodity futures contracts for plaintiff's account. The second amended complaint sets forth in twelve claims various wrongful acts by defendants as a result of which plaintiff claims to have lost some $36,000. Defendants have moved to dismiss or strike various of these claims, while plaintiff has moved for partial summary judgment on the question of whether the discretionary trading account involved here is an investment contract so as to be covered by the securities laws.

*Claims Arising Under Various Securities Acts*

Plaintiff's first and third claims allege violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Rules and Regulations thereunder, and of Sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2) and 77q(a), respectively. The substance of these claims is that de-

fendants knowingly made false representations and concealed material facts concerning the risks and profitability of commodity futures trading and their own experience and methods. The second and fourth claims assert pendent claims based on the same facts arising under the California Corporate Securities statute. Cal.Corp.Code §§ 25400–25402, 25500–25504, and 25110.

Prior to the enactment of the Commodity Futures Trading Commission Act of 1974, the courts were split on the question of whether a discretionary commodities trading account was a security. *Compare Moody v. Bache & Co., Inc.*, 570 F.2d 523 (5th Cir. 1978) (a security) *with Hirk v. Agri-Research, Inc.*, 561 F.2d 96 (7th Cir. 1977) (not a security). This issue need not be decided here, however, because even if the discretionary commodities trading account is assumed to be a security, the exclusive jurisdiction provision of the 1974 Act precludes application of the securities laws to this action.[1] CFTC Interpretive Letter No. 77–2, CCH Commod.Fut.L.Rep. ¶ 20,257 (1977).

The 1974 Act, adopted in the form of amendments to the Commodity Exchange Act, 7 U.S.C. §§ 1–22, significantly expanded federal regulation of commodity futures trading under a new Commodity Futures Trading Commission. Section 2 of the Act gives the Commission "exclusive jurisdiction with respect to accounts, agreements . . . and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market . . . ." 7 U.S.C. § 2. The evident intent of this language to confer exclusive jurisdiction over commodity futures trading accounts in the Commission is confirmed by the legislative history. The Conference Report states in relevant part—

The House bill provides for exclusive jurisdiction of the Commission over all futures transactions. However, it is provided that such exclusive jurisdiction would not supersede or limit the jurisdiction of the Securities and Exchange Commission or other regulatory authorities.

The Senate amendment retains the provision of the House bill but adds three clarifying amendments. The clarifying amendments make clear that (a) the Commission's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies; and (c) Federal and State courts retain their respective jurisdictions.

The Conference substitute adopts the Senate amendment, including the provision in section 402(d) of the bill which strikes the last sentence of section 4c of the Commodity Exchange Act. The language being struck provides that "Nothing in this section [section 4c] or section 4b shall be construed to impair any State law applicable to any transaction enumerated or described in such sections."

H.Conf.Rep.No. 93–1383, 93d Cong., 2d Sess., (1974), 1974 U.S.Code Cong. and Admin.News, pp. 5843, 5897. See also Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy*, 29 Vand.L.Rev. 1, 7–20 (1976).

Senator Talmadge, Chairman of the Senate Committee on Agriculture and Forestry, specifically stated that the Act was designed to supersede SEC regulation of commodities trading:

It was not intended that the jurisdiction of the Securities and Exchange Commission with respect to investment contracts be superseded, except to the extent that jurisdiction is granted to the Commodity Futures Trading Commission with respect to contracts for future delivery or options relating, or purporting to relate, to tangible commodities, or which are effected on a contract market designated pursuant to section 5 of the Act.

---

1. Plaintiff's motion for summary judgment on the investment contract issue thus need not be decided.

The Commodity Futures Trading Commission Act of 1974, Committee Print, Senate Committee on Agriculture and Forestry, 93d Cong., 2d Sess. 1974 at 7.[2]

The congressional intent to preempt state commodities regulation was also made explicit in the legislative history:

> Under the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act (and the regulations issued by the Commission) would preempt the field insofar as futures regulation is concerned. Therefore, if any substantive State law regulating futures trading was contrary to or inconsistent with Federal law, the Federal law would govern. In view of the broad grant of authority to the Commission to regulate the futures trading industry, the Conferees do not contemplate that there will be a need for any supplementary regulation by the States.

H.R.Rep.No.93–1383, 93d Cong., 2d Sess. (1974) at 35–36; 1974 U.S.Code Cong. and Admin.News, pp. 5843, 5897.

■ In the light of Congress' plainly stated intent to have the Commodity Exchange Act, as amended, preempt the field of regulation of commodity futures trading, any claim under federal or state securities statutes is barred. *Bartels v. International Commodities Corp.*, 435 F.Supp. 865, 868 (D.Conn.1977); *International Trading Ltd. v. Bell*, 556 S.W.2d 420 (Ark.1977); *Birenbaum v. Bache & Co., Inc.*, 555 S.W.2d 513 (Tex.Civ.App.1977). Accordingly, plaintiff's first through fourth claims must be dismissed.

*Claims Arising Under the Commodity Exchange Act*

■ Plaintiff's fifth through eighth claims allege various violations of the anti-fraud and registration provisions of the Commodity Exchange Act. 7 U.S.C. §§ 6b, 6k, 6m, 6n, and 6o. The Court raised *sua* *sponte* the question whether a private right of action exists to enforce these provisions. No specific authority is given in the Act for such an action. A private right of action had been recognized, however, to enforce the anti-fraud provisions of the Commodity Exchange Act as it existed prior to the 1974 amendments. *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir. 1973), *reversed on other grounds*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1974) (7 U.S.C. § 13b—anti-manipulation provision); *Booth v. Peavey Company Commodity Services*, 430 F.2d 132 (8th Cir. 1970) (7 U.S.C. § 6b—anti-fraud provision); *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (N.D.Ill.1967) (§ 6b); *United Egg Producers v. Bauer International Corp.*, 311 F.Supp. 1375 (S.D.N.Y.1970) (§ 13b); *McCurnin v. Kohlmeyer & Co.*, 340 F.Supp. 1338 (E.D.La.1972) (§ 6b); *Johnson v. Arthur Espey, Shearson, Hammill & Co.*, 341 F.Supp. 764 (S.D.N.Y.1972) (§ 6b); *Arnold v. Bache & Co., Inc.*, 377 F.Supp. 61 (M.D.Penn.1973) (§ 6b). The 1974 Act retained and strengthened the statutory prohibitions against fraud and manipulation. Although Congress did not explicitly acknowledge private causes of action in the 1974 Act, there is evidence that Congress did not intend to interfere with these judicial interpretations. The 1974 Act explicitly states that "[n]othing in [the exclusive jurisdiction] section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2. Senator Talmadge, in presenting the Conference bill to the Senate, noted that "[t]he vesting in the Commission of the authority to have administrative law judges and apply a broad spectrum of civil and criminal penalties is likewise not intended to interfere with the courts in any way." 120 Cong.Rec. 30459 (Sept. 9, 1974). This history precludes finding a congressional intent to overrule the cases that had implied a private right of action for violations of the

---

**2.** If SEC jurisdiction is superseded, private causes of action under the securities laws must also be considered to be barred. *See* Johnson, *supra* at 32 ·35. Nothing in the legislative history suggests that private actions under the securities laws are to be treated differently from actions brought by the SEC. Such a construction would be anomalous.

anti-fraud and manipulation provisions of the Act.

■ That conclusion is reinforced by the familiar presumption that the legislature is aware of existing constructions of statutes and does not intend to overrule them if the provision is reenacted in substantially the same form. *Georgia Association of Independent Insurance Agents v. Board of Governors of the Federal Reserve Board*, 533 F.2d 224 (5th Cir. 1976).

■ The Commodity Futures Trading Commission has also interpreted the Act as implicitly authorizing private causes of action. Statement of the CFTC Concerning Referral of Private Litigation Under the Doctrine of Primary Jurisdiction, 41 Fed. Reg. 18471 (May 5, 1976). It is appropriate to give considerable deference to the interpretation of a statute by the agency charged with its administration. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). This canon of construction strengthens the Court's conclusion that the 1974 Act should not be interpreted as foreclosing a private cause of action for damages under the Act.

■■ Since there is no general grant of jurisdiction to the district courts contained in either the original or the amended version of the Act, an independent ground for federal jurisdiction over the action must be found. Under 28 U.S.C. § 1337 jurisdiction is granted over actions "arising under any Act of Congress regulating commerce." This provision has been repeatedly held to grant federal jurisdiction over actions arising under federal statutes enacted under authority of the Commerce Clause. *Kipperman v. Academy Life Insurance Co.*, 554 F.2d 377, 379 (9th Cir. 1977). At least two other federal courts have used § 1337 as the basis for entertaining private actions for violations of the Commodity Exchange Act. *E. F. Hutton & Co., Inc. v. Lewis*, 410 F.Supp. 416 (E.D.Mich.1976); *Gould v. Barnes Brokerage Co.*, 345 F.Supp. 294 (N.D.Tex.1972).

■ Another potential barrier to current adjudication of the fraud claims is the doctrine of primary jurisdiction. One district court has ruled that "[a] defrauded plaintiff has no private right of action under [the 1974 Act] until he has invoked the Commodity Commission's reparations procedure." *Bartels v. International Commodity Corp., supra* at 870. There is nothing in the language or legislative history of the 1974 Act, however, which suggests that Congress intended to require an injured party to first utilize the administrative reparations procedure provided by 7 U.S.C. § 18 before instituting an action in court. The Court is aware of no other reason to apply the judicially developed concept of primary jurisdiction here. Courts afford the traditional forum for damage claims in fraud cases and the special expertise of the Commission will not routinely be needed in such cases. The Commission has taken the same position, encouraging the courts not to apply the doctrine of primary jurisdiction to private causes of action for damages under the Commodities Exchange Act. CFTC Statement, *supra*. The Court holds, therefore, that claims five and eight, based on anti-fraud provisions of the Act, state valid causes of action which can be properly adjudicated now.[3]

■ Claims six and seven require a different analysis. These claims allege a failure to register as required by the Act. No private right of action has previously been implied for violations of the registration provisions. Assuming *arguendo* that a private cause of action should be implied, the relief plaintiff seeks is unavailable. Plaintiff seeks to void all trading done on his behalf by the defendants because of their failure to comply with the registration provisions. This type of relief has been held to be available to void securities transactions

---

**3.** The Court will reserve ruling on whether scienter is a necessary element of these claims. Although inartfully drafted, the complaint alleges fraud adequate to survive a motion to dismiss even if scienter is required.

for the broker's failure to register as required by § 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78*o*(a)(1). *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357 (5th Cir.), *cert. denied* 393 U.S. 913 (1968). *See Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780 (7th Cir. 1977) (voiding contract for violation of Investment Company Act of 1940). These cases, however, relied on a statutorily granted rescission remedy; section 29(b) of the Securities Exchange Act expressly allows an innocent party to void a contract made in violation of any provision of the Act. 15 U.S.C. § 78cc(b). No corresponding provision is found in the Commodity Exchange Act. Thus, there is no statutory basis for rescission here. While the general allegations in the complaint of misrepresentation and omission of material facts might be sufficient to state a common law claim for rescission, the instant claims are specifically founded on the violation of the registration provisions of the Commodity Exchange Act. The mere failure to register does not amount to fraud, deceit or misrepresentation sufficient to justify rescission.[4] Plaintiff has thus failed to state a claim for relief and the sixth and seventh claims must be dismissed.

*Other Claims*

The ninth claim seeks rescission because of alleged violations by the defendants of certain rules of the Chicago Board of Trade and the Chicago Mercantile Exchange. This claim should properly have been separated into two counts, for it alleges both a breach of contract, resulting from a provision in the contract requiring Dean Witter to abide by the rules of any exchange or market where transactions are executed, and an independent claim arising from the violation of the rules.

 The claim based on violations of the Exchange and Board of Trade rules must be dismissed. There is no statutory or other authority for implying a private right of action to seek redress for such violations. The commonly accepted standard for determining whether a private cause of action should be implied for violations of stock exchange rules was stated by Judge Friendly in *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2nd Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). If the rule is an integral part of the regulatory scheme, substituting for an agency rule, and imposes an explicit duty unknown to the common law, a private cause of action should be implied. The rules involved here require continuing supervision over an account, specific written approval for trades and specific disclosure. While these rules are explicit, they do not create totally new duties wholly unknown to the common law but reflect generally the obligations a broker owes his client. In addition these rules do not appear to be an integral part of the regulation of commodity futures trading. The 1974 amendments created new duties under the Commodity Exchange Act itself, rather than relying on continued self-regulation. The areas left to self-regulation by the exchanges are of relatively minor importance.

 Moreover, there is no basis for federal jurisdiction over such a claim. As noted above, the Commodity Exchange Act contains no general grant of jurisdiction to the federal courts and is thus distinguishable from the Securities Exchange Act which contains an explicit provision granting jurisdiction to the federal district courts for "violations of this chapter or the rules and regulations thereunder". § 27, 15 U.S.C. § 78aa. The courts have read this language broadly to include stock exchange rules; they have also used the existence of such federal jurisdiction as one factor in implying a private right of action. *Zagari v.*

---

4. Had plaintiff attempted to state a claim for damages for violation of the registration provisions, a causal connection between the failure to register and the damage would have to be alleged. *See Moody v. Bache & Co., Inc.*, 570 F.2d 523, 529 (5th Cir. 1978). Since no such claim is alleged, however, it is unnecessary to decide whether a private right of action for damages exists for violation of the registration provisions.

*Dean Witter & Co., Inc.*, CCH Fed.Sec.L. Rep. ¶ 95,777 (N.D.Cal. Sept. 26, 1976). Reliance on 28 U.S.C. § 1337 as a ground for jurisdiction over violations of specific statutory provisions is to be distinguished from jurisdiction over violations of exchange rules which are not "Acts of Congress regulating commerce". Although a violation of duties *inferable* from a statute regulating commerce may also give rise to § 1337 jurisdiction (*Garrett v. Time-D. C. Inc.*, 502 F.2d 627 (9th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975)), the exchange rules involved here cannot be inferred directly from the statute, having been independently promulgated by private groups. The lack of federal jurisdiction therefore requires dismissal of the claim so far as it is based on violations of Exchange and Board of Trade Rules.

■ Defendants also challenge the breach of contract claim for failure to allege specifically that transactions were made on either the Chicago Board of Trade or the Chicago Mercantile Exchange. In the absence of a showing that the rules are applicable to these transactions, no contractual claim for their violation exists. Plaintiff may have leave to amend his complaint to allege this fact if he can do so.

■ Although claim nine contains no specific demand for punitive damages, they are requested in the prayer for relief for this claim. Assuming punitive damages to have been properly pleaded, the prayer must nevertheless be struck. This claim is now based solely on the breach of contract and California law does not permit recovery of punitive damages in a contract action. Cal.Civ.Code § 3294; *Crogan v. Metz*, 47 Cal.2d 398, 405, 303 P.2d 1029 (1956); *Dryden v. Tri-Valley Growers*, 65 Cal.App.3d 990, 135 Cal.Rptr. 720 (1977).

■ Defendants also challenge the sufficiency of the tenth claim, which alleges that defendants were contractually bound to obey New York Stock Exchange Rule 405. However, the contractual provision relied upon provides only that:

"2. . . . Whenever any rule or regulation shall be prescribed or promulgated by the New York Stock Exchange . . . which shall affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded, as the case may be, by such rule or regulation, . . ."

Plaintiff has failed to allege how Rule 405 modifies or supersedes any of the provisions of the agreement. Absent such an allegation, this contractual provision has no effect. Thus, no claim has been stated.

■ Even if the complaint were liberally construed to state a private cause of action for violation of Rule 405, this claim would still have to be dismissed. The Court has ruled that the grant of exclusive jurisdiction to the Commodity Futures Trading Commission bars a private cause of action based on the securities laws. Since a private cause of action for a violation of exchange rules can only be implied when those rules play an integral part in carrying out the underlying objectives of the securities acts (*Colonial Realty Corp. v. Bache & Co., supra*), an action based on violation of stock exchange rules should also be barred by the exclusive jurisdiction provision.

■ The eleventh claim is based on pendent jurisdiction and alleges a breach of fiduciary duties. The alleged breach, the failure to ascertain what type of trading was suitable for plaintiff combined with a failure to monitor the transactions made to be sure they were of the appropriate type, is also alleged to violate various statutes and rules. Since the Court interprets this claim as based on common law concepts of fiduciary duty, defendants' argument that no private cause of action can be stated for some of the rules alleged to be violated is not relevant. Plaintiff's allegation of breach of fiduciary duty is adequate to state a cause of action under California law. *Twoomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 69 Cal.Rptr. 222 (1968).

The twelfth claim, also relying on pendent jurisdiction, seeks recovery for common law negligence. No substantive challenge to this claim has been made.

 Plaintiff seeks punitive damages for claims eleven and twelve. California law, applicable to these common law claims, requires a finding of "oppression, fraud or malice" before punitive damages can be awarded. Cal.Civ.Code § 3294. Plaintiff alleges in paragraph 22 that defendants' conduct was "willful and malicious and in reckless disregard of the rights of plaintiff." This allegation is sufficient to state a claim for punitive damages. *Kendall Yacht Corp. v. United California Bank*, 50 Cal. App.3d 949, 123 Cal.Rptr. 848 (1975). Although the specific charges alleged in claims eleven and twelve appear to sound in negligence, the allegation of malice is sufficient to sustain the claim.

For the reasons stated, claims one through four, inclusive, six, seven and ten will be dismissed, claim nine will be dismissed with leave to amend the contract claim and the prayer for punitive damages in connection with claim nine will be struck.

Plaintiff is directed to file within twenty days an amended complaint incorporating the substance of claims five, eight, nine, eleven and twelve only. The amended complaint shall state, *in separate counts,*

(1) The fraud claim based on the Commodity Exchange Act.

(2) The breach of contract claim under the customer's agreement.

(3) The common law fraud claim.

(4) The common law claim for breach of fiduciary duties.

(5) The common law claim of negligence.

Each claim shall set forth, clearly and succinctly, those facts, and only those facts, on which it is based, e. g., the fraud claim should set forth the facts allegedly establishing fraud (not negligence). While cross-reference is permitted, the Court will strike material not relevant to or supportive of the particular claim under which it appears.

In view of the inadequacy of plaintiff's prior pleadings herein, plaintiff's counsel are directed to have the amended complaint prepared by local counsel in conformity with the forms and practices followed in this Court. Failure to do so may result in rejection of the pleading.

Defendants shall file their answer within twenty days of service of the amended complaint. The action is set for a status conference on December 15, 1978, at 10 a. m. for trial setting.

IT IS SO ORDERED.