Robert G. WESTLAKE, Individually, and
on behalf of all other persons
similarly situated

v.

Alan ABRAMS, a/k/a James A. Carr and
Charles P. LeMieux III, Individually and
as Co-Partners doing business under the
firm name of "Lloyd, Carr & Co.," James
A. Brian, John Cosulich, Thomas LaBus,
Charles J. Hecht, Noel A. Gage, and
Robert Waldheim, Charles A. Wathen,
Michael D. Shuster and Ralph R. Zolla,
Individually and as representatives of
all other persons similarly situated.

Civ. A. No. C78–555A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 26, 1980.

338

Albert Sidney Johnson, Atlanta, Ga., Hoffman and Hertzig, Carl H. Hoffman, Coral Gables, Fla., for plaintiff.

Charles J. Hecht, New York City, pro se.

King & Spalding, Michael C. Russ, Atlanta, Ga., Robert E. McLaughlin, Sandra C. Steele, Boston, Mass., for defendants.

## ORDER

MOYE, Chief Judge.

This action was brought by a purchaser of two commodity futures options from Lloyd, Carr & Co. (hereinafter Lloyd, Carr) under the Securities Act of 1933, 15 U.S.C. § 77a et seq. (hereinafter the Securities Act); the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (hereinafter the Exchange Act); the rules and regulations promulgated thereunder by the Securities and Exchange Commission (SEC); the Commodity Exchange Act, 7 U.S.C. § 1 et seq., as amended by the Commodity Futures Trading Commission (CFTC) Act of 1974; the rules and regulations promulgated thereunder by the CFTC; and the common law. The case is presently before the Court on defendant Noel A. Gage's motion for summary judgment.

The complaint, filed March 30, 1978, alleges that plaintiff purchased on October 14, 1977, and October 31, 1977, from defend-

ant Lloyd, Carr, a commodity futures option broker, certain interests denominated "commodity futures options." Plaintiff contends that these interests constituted securities within the meaning of section 2(1) of the Securities Act[1] and section 3(a)(10) of the Exchange Act[2] and that Lloyd, Carr did not properly register these alleged securities with the SEC as required by section 5 of the Securities Act. It is further alleged that the sale of said securities involved fraudulent and misleading statements by Lloyd, Carr to investors within the meaning of sections 12 and 17(a) of the Securities Act and section 10(b) of the Exchange Act and Rule 10b–5 of the SEC promulgated thereunder.

In the alternative plaintiff argues that if the interests which he purchased are not considered securities, then Lloyd, Carr violated the Commodity Exchange Act, as amended, by selling interests in commodity futures options without being properly registered with the CFTC as a futures commission merchant as required by Rule 32.3 of the CFTC and by selling commodity futures options not preceded or accompanied by a disclosure statement meeting the requirements of Rule 32.5 of the CFTC. Plaintiff further alleges that the sale by defendants of said commodity futures options were in violation of section 405 of the CFTC Act of 1974 and Rule 32.9 of the CFTC.

Finally plaintiff alleges that the activities of the defendants herein amounted to common law fraud and deceit.

Plaintiff seeks to recover actual and punitive damages for himself[3] and for a class of similarly situated purchasers[4] for losses resulting from their purchases, with interest thereon, together with the costs of this suit and reasonable attorney's fees.

Defendant Noel A. Gage (Gage), whose motion for summary judgment is considered herein, was named as a defendant because the plaintiff alleges that Gage acted as general counsel for Lloyd, Carr and was, by virtue of and through his activities in that position, a "controlling person" of Lloyd, Carr within the meaning of section 15 of the Securities Act and section 20 of the Exchange Act, and in addition was an "aider and abettor" in the illegal acts, practices, and course of business allegedly pursued by Lloyd, Carr.

Defendant Gage originally moved to dismiss and for summary judgment on May 30, 1978. On July 18, 1979, the Court entered an order denying Gage's motion to dismiss but granting his motion for summary judgment. In denying Gage's motion to dismiss

1. Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1) reads:

> When used in this title, unless the context otherwise requires—
> (1) the term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

2. Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10) reads:

> The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

3. Plaintiff Westlake alleges that he purchased from defendant Lloyd, Carr two commodity futures options in October 1977 for a total of $16,620 which Lloyd, Carr has never refunded.

4. Plaintiff's motion for class certification has not yet been ruled upon by this Court.

the Court held that the allegations contained in plaintiff's complaint were sufficient to withstand a motion to dismiss as to the questions of whether the plaintiff's interests in commodity futures options were securities and whether the complaint pled fraud with sufficient particularity. The Court reserved judgment on the issue of whether an implied private cause of action was created under the Commodity Exchange Act, as amended. In granting defendant's motion for summary judgment, the Court held that Gage could not be found legally culpable for the allegedly unlawful activity of Lloyd, Carr.

Subsequently, plaintiff moved the Court to vacate or reconsider its granting of summary judgment, urging that he had not had sufficient opportunity to conduct discovery in order to demonstrate Gage's involvement in the activities upon which liability could be based. On September 14, 1979, this Court vacated its order of July 18, 1979, in order to allow the plaintiff time for further discovery so that he might attempt to establish a factual basis to overcome Gage's motion for summary judgment.

Following the Court's order vacating summary judgment, both plaintiff and defendant Gage have conducted substantial discovery, including the depositions of Gage, plaintiff Westlake, and Frank J. Post, former staff counsel to Lloyd, Carr. In addition, documents in defendant Gage's law offices in Southfield, Michigan, have been examined. Plaintiff and defendant Gage have now briefed the issues in light of the additional discovery and the Clerk has resubmitted defendant Gage's motion for summary judgment to this Court for determination.

In his briefs in support of his motion for summary judgment defendant argues that summary judgment is appropriate here because first, no security was sold to the plaintiff by Lloyd, Carr, thus rendering the federal securities acts inapplicable, and second, no implied private cause of action arises out of the Commodities Exchange

Act, as amended. The Court will consider defendant's motion with respect to the federal securities laws, but will again defer ruling on the motion to the extent it is based on the lack of an implied cause of action under the commodities laws. The Court is deferring ruling on that portion of defendant's motion because the Fifth Circuit Court of Appeals is currently considering the questions so presented, and already has heard argument in a case similar to this on June 4, 1980.[5] Because this Court will be bound by the Fifth Circuit's decision concerning an implied cause of action under the Commodity Exchange Act, it would be a waste of judicial resources for this Court to consider defendant's motion with respect to that issue since a Fifth Circuit decision should be soon forthcoming. However, plaintiff's alternative avenue of recovery, the federal securities laws, is ripe for determination and is herein considered.

### I.

■ In order for the interests purchased by plaintiff to constitute securities under section 2(1) of the Securities Act and section 3(a)(10) of the Exchange Act they must meet the definitional test prescribed in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1102–1103, 90 L.Ed. 1244 (1946). There the Court stated that:

> "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.
> . . ."

As was noted in *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 477 (5th Cir. 1974), this test subsumes within it three elements: first, the existence of an investment of money; second, that the scheme functions as a common enterprise; and third, that profits of the enterprise are derived solely from the efforts of others. The Court will first determine whether the complaint, cou-

---

5. *Rivers v. Rosenthal & Co.*, Civ. Action File No. CV178–186 (S.D.Ga.1978) (finding an implied cause of action), appeal pending, 79–1313 (5th Cir.).

pled with the depositions and documents presently before the Court, is sufficient to withstand a motion for summary judgment based on the ground that the *Howey* test has not been met, and will then decide whether a cause of action exists under the federal securities laws *even if the commodity futures option is a security* in light of the exclusive jurisdiction granted to the CFTC over such options by the 1974 amendments to the Commodity Exchange Act.

Plaintiff's amended complaint alleges in Count I, ¶ 18(a) that Lloyd, Carr recommended certain commodity futures contracts to him and, according to ¶ 18(c) of said Count undertook to advise him of the most opportune time either to sell or to exercise the option and specific commodity futures contracts. Plaintiff alleges in ¶ 18(d) of Count I that he paid money to Lloyd, Carr for the purchase of an investment in interests denominated "commodity futures options" with the expectation of receiving said recommendations, advice, and counselling and receiving profits or a return on the investment. Said profits were entirely dependent on the success of Lloyd, Carr in continuing to be able to render said advice, according to ¶ 18(e). Plaintiff further alleges that the inducement for his purchase of the options consisted of the representations and promises of Lloyd, Carr (¶ 18(g)), and that neither Lloyd, Carr nor its representatives owned the underlying commodity futures contracts, nor escrowed for the purpose of acquiring such contracts any portion of the payments made by named plaintiff (¶ 18b).

Plaintiff has therefore alleged that Lloyd, Carr sold him what the commodities industry has labeled "naked options." As explained in *British American Commodity Options Corp. v. Bagley*, 552 F.2d 482 (2d Cir. 1977):

The commodities business operates as a marketplace of contracts. The contracts traded are for the purchase, or sale, of specific amounts of a commodity either that have already been produced, or that will be produced in the future and delivered by a specific date. This latter group of contracts are known as "commodity futures." A "commodity option" is a contractual right to buy, or sell, a commodity or commodity future by some specific date at a specified, fixed price, known as the "striking price." A contract entitling its owner to purchase the commodity is known as a "call," and a contract entitling its owner to sell is called a "put." In the plainest case, an option is created, or "written," by the owner of a commodity or commodity futures contract, who commits himself to sell his goods or contract. But an option can also be written by anyone else willing to take the chance that he will be able to cover his obligation in the futures market, if the option purchaser decides to exercise the option. Such an option is described as "naked."

*Id.* at 484–85 (footnotes omitted).

Plaintiff has supplemented the allegations in his complaint with statements in his deposition taken November 28, 1979. Therein he stated that he made a decision to purchase a coffee option based solely on conversations about the coffee market with Bob Bala of Lloyd, Carr (pp. 55–56), that Bala had indicated to the plaintiff that he would inform the plaintiff of the best time to exercise the options he had purchased (pp. 63, 65), and that Bala urged additional purchases on the plaintiff through high pressure sales tactics (p. 60).

Defendant's summary judgment contention is that since Lloyd, Carr made it clear to plaintiff that he retained the legal power to force Bala to exercise his options at any time before they expired, all the elements of a security, as delineated by *Howey*, were not present.

■ While it is clear that a particular commodities futures contract is not in itself a security, *Moody v. Bache & Co.*, 570 F.2d 523, 525 (5th Cir. 1978), the Fifth Circuit, among other courts, has recognized that discretionary accounts in commodities futures contracts may be "investment contracts" and thus "securities" for purposes of the securities acts. This is because such discretionary accounts may contain the *Howey* elements of investment, common en-

terprise, and dependence solely on the efforts of others. *SEC v. Continental Commodities*, 497 F.2d 516 (5th Cir. 1974). In addition, at least two Circuit Courts of Appeals have specifically found naked option contracts, which plaintiff has alleged he purchased, to be securities. *SEC v. Commodity Options International*, 553 F.2d 628 (9th Cir. 1977); *SEC v. American Commodity Exchange*, 546 F.2d 1361 (10th Cir. 1976). *But see Glazer v. National Commodity Research and Statistical Service*, 547 F.2d 392 (7th Cir. 1977).

The Court finds that the plaintiff herein has met the *Howey* test for determining whether a security exists based on the record presently before the Court. First, plaintiff has alleged, and defendant has failed to rebut, that an investment of money was made. Second, the plaintiff has alleged the existence of a common enterprise such as was found to exist in *Continental Commodities*,[6] and the defendant's allegation that the plaintiff retained the legal right to exercise his option does not refute the existence of this second *Howey* element. Third, through his deposition and complaint plaintiff has alleged that the profits he was seeking were to be derived solely from the efforts of others, specifically Lloyd, Carr's agents. It is this element of the *Howey* definition that defendant Gage has challenged.

■ Gage believes that, because Lloyd, Carr made it clear in its letter to plaintiff confirming the purchase of his options that he could exercise his options before the termination date, the profits plaintiff sought could not be said to be derived solely from the efforts of others. (See exhibit 3 to deposition of Robert Westlake). The Court disagrees, basing its decision on the holding of *SEC v. Koscott Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974). In *Koscott* the court held that the proper standard in determining whether a scheme constitutes an investment contract is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.* at 483, *quoting SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir.), *cert. denied* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). While refusing to hold at this time that a security was purchased by plaintiff, the Court believes that for summary judgment purposes the plaintiff has shown that a genuine issue of material fact exists as to whether the efforts made by Lloyd, Carr were the undeniably significant ones on which the plaintiff relied for a profit from his investment. The Court notes that the burden of proof is on the defendant as the party seeking summary judgment, and any doubt about the existence of a genuine issue of material fact must be resolved against the defendant. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). Because plaintiff has stated in his deposition that despite the confirmation letter he received from Lloyd, Carr he was in fact relying on Lloyd, Carr to advise him when to exercise his option, the Court finds that a genuine issue of material fact continues to exist as to whether the third *Howey* element is met and declines to grant defendant Gage's motion for summary judgment inasmuch as it is based on the ground that no security was sold under the *Howey* test. If the plaintiff is able to prove at trial that he did rely

**6.** The court found the facts in *Continental Commodities* to be as follows:

The trading enterprise extended the opportunity to invest in commodities futures contracts. Continental Commodities undertook to recommend certain commodities futures contracts to its customers. An interested customer would first be issued an option, guaranteeing him the right to purchase the contract at a stated price, with the option to remain open for a specified period of time. Continental Commodities neither owned the underlying futures contract nor escrowed any portion of the customer payments for the purpose of acquiring such contracts. In addition, Continental Commodities undertook to advise a customer of the most opportune moment either to sell or to exercise the option. Finally, it also offered investment counseling as to the most propitious time to sell a specific futures contract.
497 F.2d 516, 519 (5th Cir. 1974). This scheme was found to meet the *Howey* test.

significantly on the efforts of Lloyd, Carr, he will have proved all three elements required for finding the existence of a security under *Howey.*

Although plaintiff has survived defendant's challenge to his having met the *Howey* test for summary judgment purposes, the Court must determine whether a cause of action continues to exist for violations of the federal securities laws in light of the 1974 amendments to the Commodity Exchange Act which placed exclusive jurisdiction over commodity options with the CFTC · beginning April 21, 1975.

At least four district courts have held that the 1974 amendments, known as the Commodity Futures Trading Commission Act of 1974, which granted the CFTC exclusive jurisdiction over options involving contracts of sale of a commodity for future delivery, preempt the field of all commodity futures trading and bar any claim under federal or state securities statutes. *See Gonzalez v. Paine, Webber,* 493 F.Supp. 499 (S.D.N.Y.1980); *Fairchild, Arabatis & Smith v. Prometco Co.,* 470 F.Supp. 610 (S.D.N.Y.1980); *Hofmayer v. Dean Witter & Co.,* 459 F.Supp. 733 (N.D.Cal.1978); *Bartels v. International Commodities Corp.,* 435 F.Supp. 865 (D.Conn.1977). *See also E. F. Hutton & Co. v. Schank,* 456 F.Supp. 507 (D.Utah 1976). These courts have held that even if discretionary commodities trading accounts or the sale of naked options are securities under the federal securities statutes, an action in federal court is improper because the securities laws no longer apply to any type of commodities transaction. The decisions rely on 7 U.S.C. § 2 which reads in part as follows:

> Provided, That the Commission shall have exclusive jurisdiction with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title: And provided further, That, except as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State.

The above-named courts have construed this portion of the Act, passed in 1974, to remove actions based on the securities laws or regulations promulgated thereunder from federal court because the statute grants exclusive jurisdiction over commodities options and accounts to the Commodity Futures Trading Commission and establishes in 7 U.S.C. § 18 a reparations procedure whereby the CFTC can act on complaints. *Bartels* held that, specifically, no action can now be maintained by a plaintiff such as Westlake based on Rule 10b–5 because Rule 10b–5 is based on statutory construction of Section 10(b) of the Securities Exchange Act of 1934 and Congress no longer wishes for Section 10(b) of that Act to apply to commodities options. In agreeing with the decision in *Bartels,* the court in *Hofmayer* relies on the following Conference Report which states:

> The House bill provides for exclusive jurisdiction of the Commission over all futures transactions. However, it is provided that such exclusive jurisdiction would not supersede or limit the jurisdiction of the Securities and Exchange Commission or other regulatory authorities.

> The Senate amendment retains the provision of the House bill but adds three clarifying amendments. The clarifying amendments make clear that (a) the Commission's jurisdiction over futures

contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies; and (c) Federal and State courts retain their respective jurisdictions.

H.Conf.Rep.No.93–1383, 93d Cong., 2d Sess., (1974), 1974 U.S.Code Cong. and Admin.News, pp. 5843, 5897.

459 F.Supp. at 736. *Hofmayer* further relies on the following statement by Senator Talmadge, Chairman of the Senate Committee on Agriculture and Forestry to which the bill was assigned:

It was not intended that the jurisdiction of the Securities and Exchange Commission with respect to investment contracts be superseded, except to the extent that jurisdiction is granted to the Commodity Futures Trading Commission with respect to contracts for future delivery or options relating, or purporting to relate, to tangible commodities, or which are effected on a contract market designated pursuant to section 5 of the Act. The Commodity Futures Trading Commission Act of 1974, Committee Print, Senate Committee on Agriculture and Forestry, 93d Cong., 2d Sess. 1974 at 7.

Id. at 736–37.

The *Hofmayer* court concludes that these statements indicate Congress' intent to have the Commodity Exchange Act preempt the field of regulation of commodity futures trading, thus barring any claim under federal securities laws.

Judge Thompson in *Mullis v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 492 F.Supp. 1345 (D.Nev.1980), disagrees with the cases discussed above and has held that the grant of exclusive jurisdiction to the CFTC to regulate commodity transactions does not preempt *judicial* application of the federal securities laws to a security used for trading commodities futures. Judge Thompson found that because 7 U.S.C. § 2 states that "nothing in this section shall supersede or limit the jurisdiction conferred

on the courts of the United States or any State" after it confers exclusive jurisdiction on the CFTC with respect to commodities agreements, accounts and transactions, the Act establishes a distinction between *agency* jurisdiction and *court* jurisdiction. Disagreeing with the above-discussed line of cases, he concludes that it is by no means a foregone conclusion that a grant of exclusive jurisdiction to the commodity *agency* to regulate commodity *transactions* preempts a *judicial* application of security *statutes* to a security used for trading commodity futures. Id. at 97,979. Judge Thompson agrees with *Hofmayer* and *Bartels* that the SEC has no power to regulate securities whose dominant feature is participation in trading commodity futures and that since SEC jurisdiction is preempted, there can be no private liability actions based on SEC rules or regulations such as Rule 10b–5. However, where those decisions proceed to the conclusion that the *courts* have no jurisdiction over private liability claims based on the securities *statutes*, Judge Thompson disagrees.

After finding that the over-all concept revealed in the language of the statute and the legislative history is: (1) The Commodity Exchange Act preempts any other federal or state statute dealing with commodity futures-trading; (2) The jurisdiction of the CFTC preempts all other agency regulation of a security, so long as the dominant purpose for the existence of the security is to trade in commodity futures; and (3) the federal courts, however, specifically retain jurisdiction to decide cases arising under federal statutes, Judge Thompson held in *Mullis* that the federal courts have jurisdiction to hear private liability claims based on the federal securities acts.

Having now outlined the issue before this Court and having reviewed the existing case law thereon, this Court will itself now examine the statute here in question to determine whether plaintiff Westlake has invoked this Court's jurisdiction under the federal securities laws. As noted earlier, 7 U.S.C. § 2 places "exclusive jurisdiction" with respect to options to buy commodities

with the CFTC. It next provides that except for the exclusive jurisdiction of the CFTC nothing in the statute shall (1) supersede or limit the jurisdiction of the SEC, or (2) restrict the SEC from carrying out its duties and responsibilities. Finally, the statute states that nothing in the statute shall supersede or limit the jurisdiction conferred on courts of the United States.

In concluding that these several clauses barred suits based on federal securities laws where a commodity option was the underlying investment, the court in *Hofmayer* relied principally on two items of legislative history reprinted in the text above. The *Hofmayer* court felt the Conference Report's finding that a Senate Amendment made clear that (a) the CFTC's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, agreements, and options; (b) the CFTC's jurisdiction, where applicable, supersedes State as well as Federal agencies; and (c) Federal and State courts retain their respective jurisdictions, precluded private suits based on federal securities laws arising out of the sale of commodity options previously held to be securities. 459 F.Supp. at 736. The *Hofmayer* court relied further on Senator Talmadge's statement in which he said that SEC jurisdiction continued except where jurisdiction is granted to the CFTC. Neither the Conference Report nor Chairman Talmadge's statement refutes the holding of Judge Thompson in *Mullis* that when the statute placed exclusive jurisdiction with respect to commodity futures investments with the CFTC it was only placing *agency* or *administrative* jurisdiction with that agency and that the reference in the statute and by the Conference Committee Report to continuing jurisdiction of the federal courts meant to make this clear.

An additional consideration in determining whether Congress meant to extinguish plaintiff Westlake's private causes of action under the securities laws is the fact that should those causes of action be extinguished he may have lost any avenue of recovery against an aider and abettor or a controlling person which he alleges defendant Gage herein to be. There is nothing in commodity law that makes control persons liable, as they are under section 15 of the Securities Act of 1933 and section 20(a) of the Securities Exchange Act of 1934. 1 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud*, Sec. 462, p. 82.372 (1979). Furthermore, it is unclear that liability for aiding and abetting another in violating the Commodity Exchange Act exists. *Id. See also Arnold v. Bache & Co., Inc.*, 377 F.Supp. 61, 65–66 n.12 (M.D.Pa. 1973). Thus, if the federal securities laws do not apply to the sale of an option to buy a commodities contract which also meets the definition of a security under the securities laws, Congress would have eliminated remedies for victims of fraudulent commodities transactions without expressly indicating an intention to do so.

■ This Court declines to find that Congress has extinguished traditional remedies without an express declaration of that intention and therefore agrees with the analysis and holding of *Mullis* and rejects that of the other district courts having ruled on this question. This Court holds that the grant of exclusive jurisdiction to the CFTC to regulate commodities transactions does not preempt judicial application of the federal securities statutes to a security used for trading commodity futures options. Although there can be no private liability actions based on SEC rules and regulations since the CFTC is the preemptive agency,[7] this Court may continue to apply the federal securities statutes themselves where implied private causes of actions exist.

---

7. While no legislative intent to extinguish private causes of action under the securities laws for plaintiffs such as Westlake can be found, it is clear that the CFTC believed that the SEC's Rule 10b–5 was no longer applicable since when the Commission proposed its own antifraud rules (see 17 C.F.R. § 20.01, effective June 24, 1975) it noted a recent Congressional reminder that unless the Commission acted quickly, there would be a gap in the regulation of options transactions. 40 Fed.Reg. 18187 (April 25, 1975) quoting H.R.Rep.No.4–122, 94th Cong., 1st Sess. 8 (1975).

## II.

Having now determined that plaintiff has withstood defendant's motion for summary judgment on the grounds that no security was sold to plaintiff by Lloyd, Carr, the Court turns to defendant's contentions that no genuine issue of material fact exists as to whether: (1) defendant Gage was a "seller" of securities; (2) defendant Gage was an aider and abettor of Lloyd, Carr's alleged violations of the securities laws; and (3) defendant Gage was a "controlling person" of Lloyd, Carr.

Because the Court has ruled above that Rule 10b–5 is inapplicable here since the CFTC now has exclusive jurisdiction to promulgate rules concerning commodity futures options, and because section 10 of the Exchange Act proscribes only activity which contravenes SEC rules and regulations, plaintiff has no cause of action under section 10 of the Exchange Act. In addition, this Court has previously held that section 17(a) of the Securities Act does not raise an implication of a private cause of action for damages, *Gunter v. Hutcheson*, 433 F.Supp. 42 (N.D.Ga.1977); therefore, the only causes of action remaining under the securities laws to be examined are plaintiff's claims under sections 12 and 15 of the Securities Act and section 20(a) of the Exchange Act.

Section 12(1) of the Securities Act provides that any person who offers or sells a security in violation of section 5, which requires registration of issuances of securities with the SEC, unless the issuance falls within an exception, shall be liable to the person purchasing such securities for the amount of consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. Section 12(2) of the Securities Act provides the same liability for a person who offers or sells a security in interstate commerce by means of a prospectus or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

It is not contested by defendant Gage that the options plaintiff purchased were not registered with the SEC or that they were sold in interstate commerce. Defendant Gage does, however, contest the application of section 12 to him because the proscriptions of section 12 apply only to sellers and offerors.

Plaintiff argues that defendant was a "participant" in the sale of unregistered securities, making him a seller of those securities within the meaning of section 12, citing *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971). There the court held that privity between a purchaser and a person held liable under section 12 is not required if the injury to the plaintiff flowed directly and proximately from the actions of the defendant. *Id.* at 693. In *Lewis v. Walston & Co.*, 487 F.2d 617 (5th Cir. 1973), this test was recast as follows: were the defendant's actions "a substantial factor in bringing about the plaintiff's purchases." *Id.* at 622. The Fifth Circuit reiterated the substantial factor[8] test in *Pharo v. Smith*, 621 F.2d 656 (5th Cir. 1980), and added clarifying language: "Mere participation in the events leading up to the transaction is not enough." *Id.* at 667.

The latest case discussing the possible liability of a person being held liable under

---

**8.** The "substantial factor" requirement of *Lewis* has precedential support. Professor Bromberg has observed that the section 12(2) cases suggest that "participation must be 'substantial' . . . [and] must '[play] an integral role in the fraud charged,' *Sprayregen v. Livingston Oil Co.*, 295 F.Supp. 1376, 1378. (S.D.N.Y.)," before one can be deemed a seller. Though Bromberg makes no observa-

tions at all about the degree of participation necessary for liability as a section 12(1) seller, in view of the strict liability nature of section 12(1) we think the degree of participation could be no less than that required under section 12(2).
*Pharo v. Smith*, 621 F.2d 656, 667 n.8 (5th Cir. 1980).

section 12 without being an immediate party to the buy-sell agreement is *Croy v. Campbell*, 624 F.2d 709 (5th Cir. 1980). In *Croy* the plaintiffs alleged that a lawyer "whom they had consulted for tax advice was a seller of an alleged security since he introduced them to the immediate owner of the alleged security and told them the alleged security was the best investment they could make from a tax standpoint. The court held that "[p]articipation in the sale of a security . . . is an important factor only as it relates to the concept of causation. A determination that one has participated in the transaction should not be conclusive as to the participant's liability as a seller, but it may be a criterion in determining whether or not the defendant caused the transaction to take place." *Id.* at 714. While the court in *Croy* stated that its holding should not be interpreted to mean that a lawyer who participates in the transaction can *never* be a seller for purposes of section 12, it held that the lawyer therein was not the cause of plaintiff's purchase and therefore not a seller. *Id.*

The allegations herein as to defendant Gage are that he served as general counsel to Lloyd, Carr;[9] that he knew "boiler-room" sales tactics were being used by Lloyd, Carr brokers to sell commodities options;[10] that he represented Lloyd, Carr in Michigan courts to force the telephone company to install phones for use in the "boiler room" sales of commodity options;[11] that he arranged for additional space for Lloyd, Carr offices[12] and negotiated leases for same;[13] that he arranged for registration under state securities laws;[14] and that his average time devoted to Lloyd, Carr matters between August 1, 1977 and November 30, 1977 was 8.45 hours per working day.[15]

■ Despite defendant Gage's extensive efforts on behalf of Lloyd, Carr, the Court cannot hold that a jury could reasonably find that he *caused* the plaintiff to purchase two commodity futures options in Atlanta in October 1977, as the Fifth Circuit's decision in *Croy* requires it to find before section 12 liability can attach. If the lawyer in *Croy* who introduced buyer and seller and recommended the purchase to buyer is not a seller, it is even clearer that defendant Gage is not. Defendant Gage is not liable to plaintiff as a violator of section 12 of the Securities Act.

Having found Gage not to be liable to plaintiffs as seller under section 12, the Court can quickly now dismiss any action against Gage as an aider and abettor of Lloyd, Carr's violation of section 12. In *Croy* the court said:

"Exceptions to this general rule (the requirement of privity) have been recognized," and liability has attached to persons acting as the immediate seller's agent, to defendants who are alleged to be controlling persons of the immediate seller, and to those who have actively participated in the fraudulent sale, either as an aider and abettor or as a coconspirator." *de Bruin v. Andromeda Broadcasting Systems*, 465 F.Supp. 1276, 1280 (D.Nev.1979).

. . . (citing cases).

9. While Gage once denied that he was "general counsel" to Lloyd, Carr except for coordinating the litigation in which Lloyd, Carr was involved, Gage informed a Mr. Richard Brickwedde of Syracuse, New York that Bushnell, Gage & Reizen acted as general counsel for Lloyd, Carr in a letter to Brickwedde dated December 6, 1977. (Gage's Deposition, Exhibit 117).

10. Frank J. Post, former staff counsel to Lloyd, Carr has stated that Gage accompanied him in the sales office in Boston where the telephone solicitations were made. "The activities consisted of the sales manager on a microphone offering bonuses for people that made the next sale, ringing bells for people that made sales, establishing quotas, threatening a broker with loss of job if he didn't sell, putting on a gorilla costume, riding a mini-bike through the office." Post Statement, February 8, 1980, p. 14.

11. Gage Deposition, Exhibits 86, 88.

12. *Id.*, Exhibits 184, 188.

13. *Id.*, Exhibit 108.

14. *Id.*, Exhibit 172.

15. Affidavit of Carl Hoffman, February 27, 1980, p. 1.

Many of these decisions impose liability on the basis of the "control" provision of § 15, 15 U.S.C. § 77o, but other courts have simply extended the language of § 12 itself to include aiders, abettors, and controlling persons as sellers. *This court is of the opinion, however, that a causation test is better suited to apply the purpose of the Act to a particular fact situation*; it is, as we have stated, a "rational and workable standard." *Hill York*, 448 F.2d at 692." 624 F.2d at 713 n.5 (Emphasis added).

The Fifth Circuit, which refused to decide in *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94 n.22 (5th Cir. 1975), whether the "controlling person" provisions of the Securities Act and the Exchange Act were the exclusive avenues by which to hold someone secondarily liable has now so held by applying a causation test to an alleged aider and abettor of a violation of section 12 of the Securities Act. Since there remains no genuine issue of material fact before the Court as to whether defendant Gage as Lloyd, Carr's attorney sold a security to plaintiff, there also can be no allegation against him as an aider and abettor of Lloyd, Carr's violation of section 12.

The Court next considers defendant's motion for summary judgment as to the allegation that he is a controlling person under the federal securities laws. Plaintiff alleges that defendant Gage is a controlling person pursuant to section 15 of the Securities Act (15 U.S.C. § 77o)[16] and section 20 of the Securities Exchange Act (15 U.S.C. § 78t).[17] The Securities Act makes liable a person who controls any person liable under 15 U.S.C. §§ 77k or 77l if that person controls the illegal party by or through stock ownership, agency, or *otherwise*, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist. The Exchange Act makes liable any person who, directly or *indirectly*, controls any person liable under any provision of the Act or any rule or regulation thereunder unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

While plaintiff has argued that defendant Gage as general counsel for Lloyd, Carr was frequently in contact with Lloyd, Carr management and was aware of Lloyd Carr's disputes with administrative agencies, Lloyd, Carr's unconventional sales methods, and certain allegations of fraud made against Lloyd, Carr, defendant contends that those allegations do not make Gage a controlling person of Lloyd, Carr. Defendant relies on his own affidavit in which he stated that he never controlled the operations of Lloyd, Carr or any principal

**16.** Section 15 of the Securities Act, 15 U.S.C. § 77o, reads as follows:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

**17.** Section 20 of the Exchange Act, 15 U.S.C. § 78t, reads:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this title or any rule or regulation thereunder through or by means of any other person.

(c) It shall be unlawful for any director or officer of, or any owner of any securities issued by, any issuer required to file any document, report, or information under this title or any rule or regulation thereunder without just cause to hinder, delay, or obstruct the making or filing of any such document, report, or information.

thereof and never had any authority to exercise any control over their activities or their practices with regard to the sale of any commodity, commodity option or security. Gage Affidavit, ¶ 10.

Defendant points to *Ayers v. Wolfinbarger*, 491 F.2d 8 (5th Cir. 1974), in which the appellants had previously been the controlling principals in a corporation, but had transferred their ownership interest to other defendants who subsequently violated the securities laws in connection with later public offerings. The stock that appellant sold was held in escrow and they retained a security interest therein, giving them the ability to reassume ownership and control in the event of a default in the purchasers' payment of the balance of the purchase price. On the basis of these facts the court was unwilling to find the appellants to be controlling persons since their only interest in the corporation's stock was as security for deferred payments. *Id.* at 15.

*Ayers* is inapposite factually to the situation before this Court and is therefore not controlling here. The allegation here is that the general counsel was a controlling person of a commodities option broker under the "otherwise" provision in section 15 of the Securities Act and the "indirectly" provision in section 20 of the Securities Exchange Act. Plaintiff is not alleging control such as is had by a stockholder or creditor of a stockholder as was the case in *Ayers*; rather he is alleging indirect control through influence over Lloyd, Carr principals.

Defendant further relies on *Malik v. Universal Resources Corp.*, 425 F.Supp. 350 (S.D.Cal.1976), for the proposition that independent counsel, who was not actively involved in the corporate affairs of the corporation which had allegedly violated the federal securities laws, was not liable as a controlling person. Judge Beeks in *Malik* dismissed the action as to said attorney holding that he was not a "control person" because he was not in a position to control the conduct of the corporate officers in their dealings with investors and was not actively involved in corporate affairs or so-

licitation of business for the corporation. *Id.* at 365 n.66.

■ Although *Malik* makes it clear that the question of whether an attorney is a controlling person can be decided before trial, the Fifth Circuit, quoting *Klapmeier v. Telecheck International*, 315 F.Supp. 1360, 1361 (D.Minn.1970), has noted that:

The issue of "control" is a complex fact question which requires an examination of the relationships of the various alleged 'controlling persons' to the person or entity which transacted the sale of securities alleged to have violated the Act, an examination of which cannot be limited to a cursory review of their proportionate equity positions, employment or director status on the relevant dates. While a majority shareholder might as a matter of law be held to "control" the entity regardless of his actual participation in management decisions and the specific transaction in question, the absence of a substantial ownership of shares does not foreclose liability under the Act as a controlling person.

*Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 694 n.20 (5th Cir. 1971). It is therefore clear that an attorney *could* be found to be a controlling person under a certain factual setting even though he is not the owner of a substantial number of shares of the corporation violating the securities laws; however, the interest of Congress as evidenced by the good faith defenses available to a controlling person was to impose liability only on those who fall within its definition of control and who are in some sense culpable participants in the acts perpetrated by the controlled person. *Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979). The controlling persons provisions contain a state-of-mind condition that requires a showing of something more than negligence to establish liability. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 nn.27, 28, 96 S.Ct. 1375, 1388 nn.27, 28, 47 L.Ed.2d 668 (1976).

■ The Court believes that plaintiff has shown sufficient involvement by defendant Gage in the day-to-day operations of Lloyd,

Carr to create a genuine issue of material fact as to whether he was a controlling person of the fraudulent commodities option broker under the "or otherwise" or "indirect" provisions of section 15 of the Securities Act or section 20 of the Exchange Act, respectively. On August 3, 1977, James A. Carr appointed the firm of Bushnell, Gage & Reizen as general counsel for Lloyd, Carr, a position acknowledged by defendant Gage in a letter to Richard Brickwedde on December 6, 1977 (Exhibit 117 to Deposition of Noel Gage, December 8, 1979). In a sworn statement dated February 8, 1980, Frank J. Post, former staff counsel [18] to Lloyd, Carr stated that Bushnell, Gage & Reizen served Lloyd, Carr in a general advisory capacity and that James Carr as president or Jim Brien as vice president, or both, would consult the law firm regarding any major decisions. Statement of Post, at 14. Post further attests that as staff counsel he looked to Bushnell, Gage & Reizen for approval of any course of action that he took, Id., and that specifically he was instructed to consult with Lynn Schecter, Dan Henry or defendant Gage, all of Bushnell, Gage & Reizen, before he disposed of any reparations claims by unpaid customers. Id. at 7. Post looked to defendant Gage or a member of his law firm and not Lloyd, Carr principals for approval of his activities as Lloyd, Carr staff counsel. Id. at 5.

The Court believes that the uncontroverted statements noted above by Post create a genuine issue of material fact as to whether defendant Gage actually controlled Lloyd, Carr through control of Lloyd, Carr's staff counsel and through the dependence of Carr and Brien on Gage's advice. Whether defendant Gage has a "lack of knowledge" or "good faith" defense under the controlling persons statutes is a question for factual resolution and one involving defendant Gage's credibility. Such a question is inappropriate for summary judgment resolution.

In summary, based on the Fifth Circuit's language in *Hill York* noted above that indications of control other than majority stock ownership are relevant to the question of whether or not a person is a control person for purposes of the federal securities laws, and in view of the broad remedial nature of the federal securities laws, this Court declines to find on the basis of the facts before it that no genuine issue of material fact exists as to whether defendant Gage was a controlling person of Lloyd, Carr.

## SUMMARY

In summary, the Court DENIES defendant's motion for summary judgment inasmuch as it is based on the ground that no security was sold to plaintiff and on the ground that the defendant was not a controlling person of Lloyd, Carr. Genuine issues of material fact as to these questions continue to exist. However, the Court GRANTS defendant's motion as to the question of his liability as a "seller" or "aider and abettor" under the federal securities laws. As stated above, the Court DEFERS ruling on that portion of defendant's motion based on the Commodity Exchange Act. Plaintiff's cause of action based on common law fraud remains, as that issue was not again before the Court, defendant's motion to dismiss with regard to that issue having been denied in the Court's July 19, 1979 order.

Plaintiff's motion for class certification pursuant to Fed.R.Civ.P. 23 remains for consideration. The Court will defer ruling on said motion for thirty (30) days in order to give defendants time to file any additional briefs in opposition to said motion, after which the Court will continue to defer ruling on said motion for ten (10) days in order to allow plaintiff an opportunity to reply if he so desires. At the expiration of this amount of time the Clerk is DIRECTED to

---

**18.** The position of staff counsel was created for Frank Post shortly after defendant Gage became involved with Lloyd, Carr activities. At the time of his appointment as staff counsel Post was twenty-six years of age and had just recently taken the Massachusetts Bar Examination. Prior to receiving the title of staff counsel, Post had worked as a broker for Lloyd, Carr.

submit to the Court for determination plaintiff's motion for class certification.

SO ORDERED.