Robert G. WESTLAKE, Individually, and on behalf of all other persons similarly situated, Plaintiff,

v.

Alan ABRAMS, a/k/a James A. Carr and Charles P. LeMieux III, doing business under the firm name of "Lloyd, Carr & Co.," James A. Brien, John Cosulich, Thomas Labus, Charles J. Hecht, George E. Bushnell, Jr., Noel A. Gage and Mark E. Reizen, Individually and as Co-Partners doing business under the firm name of "Bushnell, Gage & Reizen," Daniel J. Henry, Lynn H. Shecter, Frank J. Post, Robert Waldheim, Charles A. Wathen, Michael D. Shuster and Ralph R. Zolla, individually and as representatives of all other persons similarly situated, Defendants.

No. C78–555A.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 27, 1983.

Scheer & Elsner, Atlanta, Ga., Hoffman & Hertzig, Coral Gables, Fla., for plaintiff.

Frank J. Post, pro se.

Arthur H. Rice, Leibowitz & Rice, Miami, Fla., for Charles P. LeMieux III.

James E. Brien, pro se.

Michael D. Shuster, pro se.

John L. Taylor, Jr., McDaniel, Chorey & Taylor, Atlanta, Ga., for Charles A. Wathen.

Charles J. Hecht, pro se, Jeffrey M. Smith, Trotter, Bondurant, Miller & Hishon, Atlanta, Ga., for Charles J. Hecht.

Robert E. McLaughlin, Sandra C. Steele, Gilman, McLaughlin & Hanrahan, Boston, Mass., for receiver, Walter H. McLaughlin.

Kirk M. McAlpin, Robert Thornton, Ralph Levy, Michael C. Russ, J. Kevin Buster, King & Spalding, Atlanta, Ga., for Gage, Bushnell, Reizen and Shecter.

Charles M. Kidd, Woodrow Vaughan, Jr., Kidd & Vaughan, Bruce H. Beerman, Warren C. Fortson, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for Daniel J. Henry.

J. Marbury Rainer, Parker, Hudson & Rainer, Atlanta, Ga., for Charles E. McDonnell.

## ORDER

MOYE, Chief Judge.

This action was brought by a purchaser of two commodity futures options from Lloyd, Carr & Co. (hereinafter Lloyd, Carr) under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (hereinafter the Securities Act); the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (hereinafter the Exchange Act); the rules and regulations promulgated thereunder by the Securities and Exchange Commission (SEC); the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.,* as amended by the Commodity Futures Trading Commission (CFTC) Act of 1974; the rules and regulations promulgated thereunder by the CFTC; and the common law. The case is currently before the Court on plaintiff Westlake's motion to vacate and/or reconsider this Court's May 15, 1981, order denying class action. Also before the Court are motion of Bushnell, Gage & Reizen; Mr. Bushnell; Mr. Gage; Mr. Reizen; Ms. Shecter; and Mr. Henry (the aforesaid defendants will be collectively referred to herein as either "the defendants" or the firm of "Bushnell, Gage & Reizen") for summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint, filed March 30, 1978, alleges that the plaintiff purchased on October 14, 1977, and October 31, 1977, from defendant Lloyd, Carr, a commodity futures option broker, certain interests denominated "commodity futures options." The plaintiff contends that these interests constituted securities within the meaning of section 2(1) of the Securities Act and section 3(a)(10) of the Exchange Act.[1] In ad-

---

1. Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), reads as follows:

 When used in this title, unless the context otherwise requires—
 (1) the term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

dition, the plaintiff claims that Lloyd, Carr did not properly register alleged securities with the SEC as required by section 5 of the Securities Act. It is further alleged that the sale of the aforesaid securities involved fraudulent and misleading statements by Lloyd, Carr to investors within the meaning of sections 12 and 17(a) of the Securities Act and section 10(b) of the Exchange Act and Rule 10b–5 of the SEC rules promulgated thereunder.

In the alternative the plaintiff argues that if the interests which he purchased are not considered securities, then Lloyd, Carr violated the Commodity Exchange Act, as amended, by selling interests in commodity futures options without being properly registered with the CFTC as a futures commission merchant as required by Rule 32.3 of the CFTC and by selling commodity futures options not preceded or accompanied by a disclosure statement meeting the requirements of Rule 32.5 of the CFTC. The plaintiff further alleges that the sale by the defendants of the aforesaid commodity futures options were in violation of section 405 of the CFTC Act of 1974 and Rule 32.9 of the CFTC. Finally, the plaintiff alleges that the activities of the defendants herein amounted to common law fraud and deceit.

The plaintiff seeks to recover actual and punitive damages for himself and for a class of similarly situated purchasers for losses resulting from their purchases, with interest thereon, together with the costs of this suit and reasonable attorney's fees.[2]

The defendants, whose motions for summary judgment are now before the Court for consideration, were members of the law firm of Busnell, Gage & Reizen and were named as defendants because the plaintiff alleges that they acted as general counsel for Lloyd, Carr and were, by virtue of and through their activities as general counsel, "controlling persons" of Lloyd, Carr within the meaning of section 15 of the Securities Act and Section 20 of the Exchange Act, and in addition were "aiders and abettors" in the illegal acts, practices, and course of business allegedly pursued by Lloyd, Carr.

Originally, defendant Gage moved to dismiss and for summary judgment on May 30, 1978. On July 18, 1979, the Court entered an order denying defendant Gage's motion to dismiss but granting his motion for summary judgment. In denying defendant Gage's motion to dismiss, the Court held that the allegations contained in the plaintiff's complaint were sufficient to withstand a motion to dismiss as to the questions of whether the plaintiff's interest in commodity futures options were securities and whether the complaint pled fraud with sufficient particularity. The Court reserved judgment on the issue of whether an implied private cause of action was created under the Commodity Exchange Act, as amended. In granting defendant's motion for summary judgment, the Court held that defendant Gage could not be found legally culpable for the allegedly unlawful activity of Lloyd, Carr.

Subsequently, the plaintiff moved the Court to vacate or reconsider its order granting defendant Gage's motion for summary judgment, urging that he had not had sufficient opportunity to conduct discovery in order to demonstrate defendant Gage's involvement in the activities upon which

Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), reads as follows:

The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

2. Plaintiff, Westlake, alleges that he purchased from Lloyd, Carr two commodity futures options in October 1977, for a total of $16,620 which Lloyd, Carr has never refunded.

liability could be based. On September 14, 1979, this Court vacated its order of July 18, 1979, in order to allow the plaintiff time for further discovery so that he might attempt to establish a factual basis to overcome defendant Gage's motion for summary judgment.

Following the Court's order vacating summary judgment, both the plaintiff and defendant Gage conducted substantial discovery, including the depositions or sworn statements of defendant Gage, plaintiff Westlake, and Frank Post, former staff counsel to Lloyd, Carr. In addition, documents in defendant Gage's law offices in Southfield, Michigan, were examined. The plaintiff and defendant Gage briefed the issues in light of the additional discovery and the Clerk resubmitted defendant Gage's motion for summary judgment to this Court for determination.

By order dated November 26, 1980, published at 504 F.Supp. 337 (N.D.Ga.1980), the Court denied Gage's motion for summary judgment. Therein, the Court determined that a genuine issue existed as to whether defendant Gage was a "controlling person" of Lloyd, Carr under the federal securities laws. *Id.* at 350. In addition, the Court determined that there was a genuine issue remaining as to whether the plaintiff's investment constituted a security under the federal securities laws.[3] *Id.* at 342. Furthermore, the Court held that Rule 10b–5 of the SEC rules promulgated under section 10(b) of the Exchange Act was inapplicable to the case at bar. *Id.* at 346. Further, the Court found that sections 12 and 15 of the Securities Act and section 20(a) of the Exchange Act were not applicable to defendant Gage because no jury could reasonably find that defendant Gage caused the plaintiff to purchase the two commodity futures options at issue. *Id.* at 347. As a consequence of finding defendant Gage not liable to the plaintiff under section 12 of the Securities Act, the Court dismissed any action against defendant Gage as an aider and abettor with respect to Lloyd, Carr's violation of section 12. *Id.* at 347–48.

Subsequently, in an order dated December 23, 1980, this Court granted the plaintiff's motion for leave to file an amended complaint naming additional parties. On February 24, 1981, the plaintiff filed his amended complaint naming as additional defendants: the law firm of Bushnell, Gage & Reizen; Mr. Bushnell, Jr.; Mr. Reizen; Ms. Shecter; and Mr. Henry. The aforementioned additional defendants were all members of the law firm Bushnell, Gage & Reizen and occupy the same position in relation to the plaintiff in this suit as does defendant Gage. Therefore, the previous rulings by this Court are equally applicable to the additional defendants named above.

The plaintiff submitted a motion for class certification on July 13, 1979, pursuant to Fed.R.Civ.P. 23. Upon consideration of the briefs filed by the parties, the Court focused its attention on the issue of whether this case presents questions of law or fact common to the class as required by Rule 23(a)(2) and, if such common questions are presented, whether they predominate over any questions affecting only individual members as required by Rule 23(b)(3). In denying class certification on May 14, 1981,

**3.** The Court determined that under the *Howey* test the plaintiff satisfied the first element because it is unrefuted that he invested money with Lloyd, Carr. The second element was determined to be satisfied in that the Lloyd, Carr scheme constituted a common enterprise such as was found to exist in *SEC v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974), notwithstanding the defendants' allegation that the plaintiff retained the legal right to exercise his option. As for the third and final element of the *Howey* test, the Court determined that a genuine issue of material fact remained with regard to whether the efforts of Lloyd, Carr were undeniably significant ones on which the plaintiff relied for a profit from his investment. 504 F.Supp. at 342. While the defendants at this time suggest that a "common enterprise" did not exist under the Lloyd, Carr scheme, the defendants fail to convince the Court to change its prior ruling of November 26, 1980. See, 504 F.Supp. 342 n. 6. Furthermore, the facts of this case indicate that the Lloyd, Carr scheme is one in which the fortunes of the investors are interwoven with and dependent upon the efforts and success of those seeking the investment or of the third parties. *See SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 478 (5th Cir.1974).

the Court found that the plaintiff failed to meet his burden under Rule 23(a)(2) and 23(b)(3) because each of several thousand plaintiffs would have to prove that he relied significantly on the advice of an individual Lloyd, Carr salesman with respect to when to exercise his commodity option in order to state a claim under the Securities Act.

In that May 14, 1981 order, the Court also denied class certification of the common law fraud claims on the grounds that proving alleged fraud concerning oral misrepresentation was individual in nature and the plaintiff failed to prove any standardized representations. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973). In addition the Court noted that because class certification of claims based on alleged representations would bring into issue various state common law standards, the case is inappropriate for class certification. May 14, 1981 order at p. 8. The Court, furthermore, granted the defendant's motion for summary judgment on the third and fourth counts of the amended complaint (the Commodity Futures Trading Commission Act claims) and denied class certification on those same claims as well. The CFTC statute and rules forming in part the basis of the plaintiff's complaint are 7 U.S.C. §§ 6b and 6k and 17 C.F.R. §§ 32.3, 32.5, and 32.9. Basing its decision on *Rivers v. Rosenthal & Co.,* 634 F.2d 774 (5th Cir.1980), the Court found no implied cause of action to exist under the provisions relied on by the plaintiff. However, in light of the recent Supreme Court decision in *New York Mercantile Exchange*

*v. Leist,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), holding that an implied private right of action does exist under the CFTC Act, the Court will reconsider herein the plaintiff's CFTC Act claims with regard to class treatment in this action.

On May 28, 1981, the plaintiff filed the pending motion to vacate and/or reconsider the order denying class action. Thereafter, pursuant to substantial discovery which includes among other things the deposition of Lloyd, Carr's former "staff counsel" Frank Post and the affidavits of defendants Mr. Bushnell; Mr. Gage; Mr. Reizen; Ms. Shecter; and Mr. Henry, the defendants filed the pending motions for summary judgment.[4] The motions for summary judgment and class certification are based upon the remaining claims under the Security Act, the CFTC Act, and common law fraud. Consequently, the arguments put forth by the parties in favor of and in opposition to the respective motions are essentially identical; therefore, the Court considers below the motions and arguments concurrently.

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION AS WELL AS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before addressing the specific factual and legal arguments put forth by the parties, it is necessary to identify the relevant issues and applicable burdens of proof. With regard to the motion concerning class certification under Fed.R.Civ.P. 23,[5] the basic is-

---

**4.** While on June 18, 1982, defendants Bushnell, Gage & Reizen; Mr. Bushnell; Mr. Gage; Mr. Reizen; and Ms. Shecter filed a motion for summary judgment, defendant Henry on June 29, 1982, filed a similar motion for summary judgment essentially putting forth the same arguments. Consequently, the Court refers to and considers concurrently the pending motions for summary judgment.

**5.** Fed.R.Civ.P. 23 in pertinent part reads:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

sues to be resolved herein are whether this case presents questions of law or fact common to the class as required by Rule 23(a)(2) and, if such common questions are presented, whether they predominate over questions affecting only individual members as required by Rule 23(b)(3).[6] Should the Court resolve the aforesaid issues in favor of the plaintiff, the Court would then address the issues of whether the plaintiff would be an adequate class representative and whether a class action would be superior to other methods of adjudication of this case.

■ When moving for class certification, the plaintiff bears the burden of demonstrating that the Rule 23 requirements are fulfilled. *Payton v. Abbott Labs,* 83 F.R.D. 382, 387 (D.Mass.1979); *Amswiss International Corp. v. Heublein Inc.,* 69 F.R.D. 663, 665 (N.D.Ga.1975); *Shaw v. Mobil Oil Corp.,* 60 F.R.D. 566, 568 (D.N.H.1973). If the allegations in the complaint, which must be taken as true for purposes of demonstrating whether a class action should be granted, allege facts which demonstrate a common and interrelated course of fraudulent conduct, any individual issues relative to facts or law are outweighed by common questions. *In re Home-Stake Productions Co. Securities Litigation,* 76 F.R.D. 351, 369 (N.D.Okl.1977). Further, the determination of whether there is a proper class action does not depend on the existence of a cause of action. *Miller v. Mackey International, Inc.,* 452 F.2d 424 (5th Cir.1971). As stated

in *Miller,* "there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merits of the plaintiff's claims at this stage of the proceedings." *Id.* at 428. Therefore, the question of whether the plaintiff fails to withstand a motion for summary judgment is distinct from the question of whether the plaintiff fails to state a class action.

■ The standard for summary judgment, on the other hand, does require an inquiry into the merits of the parties' claims. Under Rule 56, the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact. *Warrior Tombigbee Transportation Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026 (5th Cir.1982). Summary judgment should be granted when the moving party is entitled to judgment as a matter of law, when it is clear what the truth is, and when no genuine issue remains for trial. *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962). In assessing whether the party moving for summary judgment has borne his burden of demonstrating want of actual dispute as to a material fact, the Court should view all evidence introduced and all factual inferences from that evidence in the

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

6. As for the Rule 23(a)(1) requirement concerning the number of members of the putative class, the Court has accepted the estimate of 4,700 members. *See* May 14, 1981, order at p. 3, n. 2.

light most favorable to the party opposing the motion, and all reasonable doubts about the facts should be resolved in favor of the nonmoving litigant. *Impossible Electronics, supra,* 669 F.2d at 1031. However, denials or allegations by the nonmoving party in the form of legal conclusions unsupported by specific facts have no probative value and are thus insufficient to create issues of material fact that would preclude summary judgment. *SEC v. Bonastia,* 614 F.2d 908, 914 (3rd Cir.1980); *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir. 1976); *Benton-Volvo-Metaire, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 139 (5th Cir. 1973).

The Court now turns to the arguments of the parties under the Security Act, the CFTC Act, and common law fraud. Each area of the law will be addressed *seriatim* below.

### Securities Act

Under the Securities Act, the plaintiff has alleged that Lloyd, Carr did not properly register with the SEC the alleged securities at issue as required by section 5 of the Securities Act. Further, the plaintiff asserts that the sale of the alleged securities involved fraudulent and misleading statements by Lloyd, Carr to investors within the meaning of section 12 of the Securities Act. Furthermore, the plaintiff asserts that the Lloyd, Carr commodity futures options fall within the definition of a security under section 2(1) of the Securities Act. In addition, the plaintiff asserts that by their activities as general counsel for Lloyd, Carr, the defendants are liable as "controlling persons" of Lloyd, Carr under section 15 of the Securities Act. The plaintiff also asserts that the case should be certified for class action treatment.

Under this Court's prior ruling, in order for the plaintiff's interests (which the plaintiff argued were either a "naked options" or under a "discretionary account") to fall within section 2(1), the interests must meet the definitional test of an investment contract prescribed in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–

1103, 90 L.Ed. 1244 (1943), where the Supreme Court stated that:

> [A]n investment contract for the purposes of the Securities Act means a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.

This definition was refined in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), in which the Court quoted the definition from *Howey* and restated it as "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." 421 U.S. at 852, 95 S.Ct. at 2060. The Fifth Circuit has further interpreted and elaborated the third prong of the *Howey* test to be "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 483 (5th Cir.1974), quoting *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

The defendants suggest that this Court should abandon the broad interpretation of the third prong of the *Howey* test as espoused in *SEC v. Koscot Interplanetary, Inc.* in favor of a strict or literal interpretation of *Howey* as expressed in the recent majority opinion of *Villeneuve v. Advanced Business Concepts Corp.,* 698 F.2d 1121 (11th Cir.1983). The Eleventh Circuit has granted rehearing en banc of the *Villeneuve* decision which in effect vacates the previous opinion and judgment and stays the mandate thereof. Eleventh Circuit Rule 26. The Securities Act, it is emphasized, is remedial in nature and therefore should be broadly construed. *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). With these principles in mind, the Court rejects the defendants' suggestion in favor of the *Koscot* interpre-

tation which this Court followed in its previous ruling. 504 F.Supp. at 342.[7]

In its November 26, 1980, order, this Court reached the following determination:

Because plaintiff has stated in his deposition that despite the confirmation letter he received from Lloyd, Carr he was in fact relying on Lloyd, Carr to advise him when to exercise his option, the Court finds that a genuine issue of material fact continues to exist as to whether the third *Howey* [*S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)] element is met and declines to grant Gage's motion for summary judgment inasmuch as it is based on the ground that no security was sold under the *Howey* test. If the plaintiff is able to prove at trial that he did rely significantly on the efforts of Lloyd, Carr, he will have proved all three elements required for finding the existence of a security under *Howey.*

504 F.Supp. at 342–43. Relying on the above quotation, the Court on May 14, 1981, denied the plaintiff's motion for class certification on the Securities Act claim on the ground that in order to prevail under the Securities Act each of the 4,700 putative class members would have to show that he relied significantly on the advice of Lloyd, Carr with respect to when to exercise his commodity option. May 14, 1981, order p. 6. Consequently, the Court concluded that the plaintiff failed to establish (1) that common questions of law or fact existed among the class members as required by Rule 23(a)(2) and (2) that common questions of law or fact predominate over individual questions to be determined as required by Rule 23(b)(3).[8]

The plaintiff now moves the Court to reconsider its May 14, 1981, order and to certify the class under Rule 23 on the basis that the Lloyd, Carr option can be shown to be a security under the Securities Act without reference to particular proof of dependency by individual class members. In support of that contention, the plaintiff posits essentially five arguments: (1) Lloyd, Carr sold "de facto" discretionary trading accounts to customers; (2) the underlying commodity option contracts were "essentially" naked; (3) the half-options sold by Lloyd, Carr were by nature investment contracts; (4) the interests sold by Lloyd, Carr were "evidence of indebtedness"; and (5) the Lloyd, Carr scheme is commonly known as a security.

In addition to vigorously opposing each argument put forth by the plaintiff in favor of class certification, the defendants filed motions for summary judgment on the securities claims, among others, arguing on the basis of facts developed through further discovery that no genuine issue of material fact exists with regard to whether the plaintiff's investment interests with Lloyd, Carr are not securities and that the defendants are not "controlling persons" under the Securities Act. Specifically, the defendants contend that there is no doubt under the facts presented that the plaintiff's investment interests are not securities because they are neither "naked options" nor are they within the category of "discretionary accounts" under the federal law.

After perusal and consideration of the filed motions and voluminous briefs, the Court concludes that the determinative issue to be resolved with regard to section 2(1) of the Securities Act is whether the Lloyd, Carr scheme constitutes a "discre-

7. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981. Prior decisions of the Former Fifth, panel or en banc cannot be overruled by panel but only by the Eleventh Circuit sitting en banc. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

8. In his May 28, 1981, memorandum, the plaintiff suggests that "mini proceedings" could be held across the country to resolve individual reliance issues and thereby satisfy the Rule 23 requirements. The Court, however, rejects the proposition on the basis that "mini proceedings" involving an estimated class of 4,700 members would be impractical and judicially inefficient in view of the likely complexities that may arise in individual discovery matters or arise at individual trials.

tionary account" thus falling within the definition of a "security" under the federal law.

### "De Facto" Discretionary Accounts

While it is established that a particular commodity futures contract is not itself a security, *Moody v. Bache & Co.,* 570 F.2d 523, 525 (5th Cir.1978), the Fifth Circuit, along with other courts, has recognized that discretionary accounts in commodity futures contracts may be "investment contracts" and thus "securities" for purposes of the securities acts.[9] This is because such discretionary accounts may contain the *Howey* elements of (1) investment, (2) common enterprise, and (3) dependence on the essential managerial efforts of others. *SEC v. Continental Commodities, Corp.,* 497 F.2d 516 (5th Cir.1974).

The third criterion of the *Howey* definition focuses upon the dependency of the investor on the entrepreneurial or managerial skills of a promoter or third party. *See SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 483 (5th Cir.1974). An investor who has the ability to control the profitability of his investment is not dependent upon the managerial skills of others. The distinction between a discretionary and a non-discretionary account is whether the broker or the investor has ultimate control over the investment decisions. A non-discretionary account is one in which the investor makes all the trading decisions and issues orders to the broker; whereas, a discretionary account is generally one in which the broker has authority to execute trades without consulting the investor. *See Mullis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 492 F.Supp. 1345, 351 n. 687 (D.Nev.1980).

The defendants argue that the instant case does not involve a discretionary account because the plaintiff retained ultimate control over his investment. The plaintiff in this case purchased one coffee option and one sugar option. The defendants specifically allege that Lloyd, Carr sent and the plaintiff received a "confirmation and invoice" confirming the plaintiff's order to purchase the coffee option. When the option was purchased, Lloyd, Carr sent the plaintiff a letter enclosing two copies of the contract and an exercise authorization form. The contract, under the heading "NOTES," states as follows:

> (b) important—to realize any equity that may have accrued in this option you MUST complete, sign and return the accompanying Exercise Authorization so that we receive it BEFORE the termination date. We accept no responsibility for equity in any option that lapses if such Authorization is not so received.

The accompanying letter instructed the plaintiff as to the exercise authorization:

> The # 3 copy—Exercise Authorization must be signed by you and returned to us. Unless you specify otherwise, the option will be exercised on the termination date. If you desire an earlier exercise date, indicate you instructions in the space provided.

The exercise authorization form reads in part as follows:

> I hereby authorize and request you to exercise this (these) option(s), on _____ or as soon thereafter as is practical and consistent with your standard procedures, to purchase and sell the underlying futures contract(s).

The plaintiff signed the exercise authorization and returned it to Lloyd, Carr without inserting any date in the blank. As a result, the defendants argue that the plaintiff instructed Lloyd, Carr to exercise his option on the termination date, if profitable. Furthermore, according to the defendants, the coffee option was exercised on the termination date. While the plaintiff's coffee option appears to have been exercised by Lloyd, Carr, the defendants have neither alleged nor shown that the plaintiff realized money from that exercise or was even informed that the option was exercised. In addition, the defendants failed to controvert the allegation that the plaintiff never

---

**9.** *Westlake, supra,* 504 F.Supp. at 341.

signed an authorization form in connection with the sugar option.

The defendants further argue that the plaintiff's account with Lloyd, Carr was non-discretionary based on the plaintiff's second deposition taken on May 14, 1982. In that deposition, the plaintiff admitted that his Lloyd, Carr account was more like his non-discretionary account with his stockbroker than with his discretionary commodities account previously held with a broker other than Lloyd, Carr. Westlake Deposition p. 161, May 14, 1982. However, the plaintiff in that deposition explained: "[i]t was my understanding that what Mr. Bala [a former Lloyd, Carr broker] would do, he would give me information and tell me when the option should be exercised. He would tell me when the options were to be exercised and since I did not have the information, it was a matter of [Mr. Bala's] going ahead and exercising it." *Id.* at 162–3. The plaintiff went on to say that he did not think Mr. Bala would have exercised an option if the plaintiff had told him not to do so. *Id.* Furthermore, the defendant points out that in that deposition the plaintiff did not deny signing the "coffee" authorization form; rather, the plaintiff indicated that he thought that he signed the authorization form and sent it in to take care of an "administrative detail." *Id.,* at 160. The defendants argue that because the plaintiff admits to signing and sending to Lloyd, Carr the authorization form that the authorization form is therefore conclusive evidence which shows that the plaintiff retained ultimate authority over the account. Consequently, the defendants assert that the account was nondiscretionary and thus not a security under the federal laws.

The main thrust of the plaintiff's position is that even if the plaintiff signed the authorization form, the dependency prong of the *Howey* test is satisfied in this case because it makes no difference what the

investors thought or were told because *in fact* their options were exercised *only* upon the approval of James Carr. To support his position, the plaintiff relies on the testimony of Mr. Hagen, a former Lloyd, Carr broker, who swore in another suit (the Brien trial) that Mr. Carr was the only one who could authorize the execution of the options.[10] The plaintiff also relies on the sworn statement of Lori Curtis, who was a back office employee involved with the direct operation of Lloyd, Carr. In that statement, Ms. Curtis attests as follows:

Q: Did you ever experience any occasion on which you were directed to exercise the option prior to the termination date?

A: I believe that may have occurred once or twice during my time there.

Q: Who was it, what person notified you that the option should be exercised on those one or two occasions?

A: The information would come to me from the branch manager, who would tell me that the client had requested an early exercise date.

Q: Before you took any action to exercise that option, was it necessary for you to contact Jim Carr?

A: Yes

Q: What would Mr. Carr's input be with respect to the option exercise?

A: It was ultimately his decision whether to proceed with exercising an option prior to its natural termination or not.

Curtis Statement pp. 14 & 15, July 27, 1981. The plaintiff, in addition, points out that Mr. Martin, another former Lloyd, Carr broker, also testified in the Brien trial that Mr. Silver, a former Lloyd, Carr customer who invested in Cocoa, requested that his option be exercised because the price was high and the market was unsteady. Mr. Carr refused to sell at that time because he thought the market would go up higher. The market dropped; consequently, Mr. Silver lost $1,000 in profit.[11] Ms. Curtis, in

---

**10.** Testimony of David D. Hagen given on January 19, 1979, and January 22, 1979, at the Brien trial. See COLLORA, Volumes Third Day and Fourth Day, p. 300516. (Hereinafter cites to the Brien trial will be referred to as "COLLORA").

**11.** Testimony of Douglas J. Martin given on January 30, 1979, at the Brien trial. See COLLORA, Volume Tenth Day, p. 301655.

addition, stated that upon the exercise of options, the profits were not automatically disbursed to the investor as provided by the Lloyd, Carr literature; rather, Mr. Carr had to approve the issuance of any disbursement of funds. Curtis Statement p. 15, July 27, 1981.

The crux of the defendants' opposition to the plaintiff's argument is that the contentions are unsupported by record facts. As pointed out by the defendants, with regard to motions for class certification under Rule 23 and for summary judgment under Rule 56, the Court should only rely on facts in the record. As shown above, the plaintiff relies on the testimony given in the Brien trial by David Hagen on January 19 and 22, 1979, and by Douglas Martin on January 30, 1979.[12] Furthermore, the plaintiff relies on the sworn statement of Lori Curtis given on July 27, 1981. A copy of the testimony given at the Brien trial and the Curtis sworn statement have been filed in this Court and therefore have been made a part of the record of the instant action. While the record facts at issue are not settled or judged to be established in this action, they are sufficiently reliable to be considered in determining whether common questions exist among putative class members or whether there remain for trial any genuine issues of material fact. Furthermore, the Court rejects the defendants' opposition to consideration of the facts in question because the Court determines that the evidence presented could be otherwise usable at trial. See 6 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.15[7] (2d ed. 1982).

Based upon the above record facts, among others, the plaintiff contends that Lloyd, Carr investors were so dependent upon Lloyd, Carr that they were unable to exercise meaningful powers over their investments. While the plaintiff cites the Court to a number of cases to support his argument, the plaintiff relies chiefly upon the recent opinions of *Gordon v. Terry,* 684 F.2d 736 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983) and *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

In *Gordon,* the plaintiff invested in five real estate syndications which proved to be unsuccessful. The plaintiff filed suit alleging violations of the federal securities laws on the grounds that his interests were investment contracts and thus "securities." The plaintiff argued that he satisfied the third prong of the *Howey* test because he was forced to rely upon the special skills or expertise of the promoter; hence, he was incapable of meaningfully exercising his retained power to control the investment. While the Eleventh Circuit in *Gordon* did not find that the facts supported the plaintiff's claim, the court did recognize and follow the reasoning developed by the Fifth Circuit in the *Williamson* case.

In *Williamson,* the court acknowledged the general rule that written agreements which place control of significant decisions of the enterprise in the hands of the investor are not securities. The Court then proceeded to recognize that when an investor is incapable of exercising a power given by a written agreement, he is in a position of dependency with no real means of protecting his investment. Therefore, the investor is forced to rely on others for his anticipated profits thereby satisfying the *Howey* third element. Couched in terms of partnership agreements according to the facts in *Williamson,* the court discussed three examples or exceptions of such dependency to the general rule.[13]

---

**12.** *U.S. v. Brien,* CR No. 78–327–F (D.Mass. 1979).

**13.** In articulating the examples, the *Williamson* court states:

.... Such an investor must demonstrate that, in spite of the partnership form which investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership power. A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partner; or (2) the partner or venturer is so

Contrary to the interpretation suggested by the defendant, the Court does not read narrowly the three examples or exceptions expressed in *Williamson* in light of footnote 15 wherein the court explained:

These [examples or exceptions] are only factors relevant to the issue that are all implicated by the facts of this case. But this is not to say that other factors could not also give rise to such a dependence on the promoter or manager that the exercise of partnership powers would be effectively precluded.

645 F.2d at 424 n. 15. While *Gordon* and *Williamson* cases may be factually distinguishable, the Court concludes that the legal principles and policies recognized in those cases are applicable to the case *sub judice.*

 Assuming that the plaintiff did sign and send to Lloyd, Carr the authorization form, the Court does not find that fact necessarily determinative of whether the plaintiff's Lloyd, Carr account was or was not discretionary. Considering the record facts in a light most favorable to the plaintiff, the Court determines that the evidence shows, despite the defendants' evidence on the contrary,[14] that there is a genuine issue of material fact as to whether Lloyd, Carr investors were so dependent upon Lloyd, Carr that they were unable to exercise meaningful powers over their investments because Mr. Carr apparently retained ultimate control over investment decisions. If James Carr, president of Lloyd, Carr, set up an investment scheme in which he retained ultimate or real control over the managerial and investment decisions, persons involved with that scheme should not be allowed to avoid the duties and associated liabilities mandated in the federal securities laws. In this case, the plaintiff is faced with the difficult burden of proving at trial that Lloyd, Carr retained ultimate control over

the investments, despite the apparent fact that investors, such as the plaintiff, signed exercise authorization forms. Whether Lloyd, Carr did or did not exercise control over the investment is irrelevant for purposes of determining if there was a discretionary account; the issue is whether Lloyd, Carr in fact retained the real power to control the investment decisions. If Lloyd, Carr did retain such power, the investors should not be deprived of the protections provided under the federal securities laws.

In conclusion, based upon the law and facts discussed above, the Court DENIES the defendants' motion for summary judgment on the Security Act section 2(1) question because there remains for trial a genuine issue of material fact concerning whether the investors traded in de facto discretionary accounts, wherein James Carr retained actual ultimate or real control over the investment decisions.

In addition, with regard to whether a "security" exists under section 2(1) of the Securities Act, the Court concludes that the case presents questions of law or fact common to the class as required by Rule 23(a)(2) and that those questions predominate over questions affecting only individual members as required by Rule 23(b) because the focus of the factual inquiry has now shifted from developing what representations were made by Lloyd, Carr to the individual investors to developing the facts with regard to the alleged common investment scheme of Lloyd, Carr and the alleged control retained by James Carr.

### Class Representative

 The Court now turns to the question of whether the plaintiff is an adequate class representative as required under Rule 23(a)(3). The main thrust of the defendants' opposition is that the plaintiff is so

---

inexperienced and knowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise

or otherwise exercise meaningful partnership or venture powers.
(Footnotes omitted). 645 F.2d at 424.

**14.** See, for example, the sworn statement of John Cosulich taken on May 11, 1982, describing the day-to-day operations of Lloyd, Carr.

sophisticated and experienced in securities law and investments that he is "atypical" of the putative class members and hence unfit to serve as class representative. The defendants emphasized that "this factor is extremely significant in the case at bar since plaintiff repeatedly has alleged that Lloyd, Carr sought out and deliberately sold to unsophisticated and inexperienced investors." Relying on the plaintiff's May 1982, deposition testimony, the defendants point out that the plaintiff has experience investing in the stock market and that his investments in stocks lessened only as a result of his success within the commodities markets where he made approximately $200,000 in profits during the years 1973–76, relying solely on the investment decisions of his broker. Furthermore, the defendants point out that the plaintiff graduated from law school and passed at least one bar exam before being employed as an attorney by Financial Service Corporation, a company that offered for sale investments such as mutual funds and limited partnership interests. While the record shows that the plaintiff has a general legal background in securities laws and has gained significant income from commodities investments in a discretionary account in which the broker had control over investment decisions, the Court rejects the defendants' opposition in view of the holding in this opinion that it is possible for the plaintiff to establish that a security exists under the *Howey* test without reference to individualized proof of reliance.

The defendants' opposition emphasizes the individual nature of the investors, whereas the holding herein focuses on the collective or common scheme of Lloyd, Carr. Therefore, because the plaintiff and the other putative class members are individuals who invested under the Lloyd, Carr scheme, the Court concludes that the plaintiff is "typical" for purposes of Rule 23(a)(3) and is thus an adequate class representative with regard to whether the facts of this case fall within the definition of a

security under the Securities Act. Simply because the plaintiff is an attorney or because he earned a significant return on commodity investments in a discretionary account does not necessarily mean that he is a "sophisticated investor" in commodity futures options. Furthermore, the plaintiff's general legal background enhances, rather than detracts, from his adequacy as a class representative in this complicated action. The Court concludes that by pursuing his own interests vigorously, the plaintiff will necessarily raise all claims or defenses common to the class. Therefore, the plaintiff satisfies the requirement of Rule 23(a)(4). *See United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C.1977).

### Superiority of Class Treatment

█ Consistent with the above rulings, the Court concludes that class certification is the superior means of protecting the interests of the putative class members. The main stay of the defendants' argument is that in cases where inherent questions are highly individualized, class treatment is not superior to other alternatives for presenting the claims advanced by the moving party. The Court agrees and has consistently so held. *See* May 15, 1981, order, p. 7; *see also Elster v. Alexander,* 76 F.R.D. 440 (N.D.Ga.1977). However, in this opinion, the Court holds that individualized proof of dependency is not necessary to establish that the Lloyd, Carr investments fall within the Securities Act; therefore, the Court rejects the defendants' opposition. Furthermore, Mr. Gael Mahony, who was appointed to be "Customers' Representative" with regard to Lloyd, Carr bankruptcy proceedings in the federal district court in Massachusetts, *In re Lloyd, Carr & Co., et al.,* 2 B.R. 714 (D.Mass.1979), informs this Court by sworn affidavit [15] that the federal district court in Massachusetts entered an order approving the settlement of the Lloyd, Carr bankruptcy case on October 29, 1981.[16] Mr. Mahony goes on to state that

---

**15.** Affidavit of Gael Mahony of Hill & Barlow, dated July 19, 1982, pp. 183. (Mahony II).

**16.** During oral arguments on February 22, 1983, Mr. Hoffman, counsel for the plaintiff, informed the Court that the action filed by Mr.

by terms of the settlement, the customers whom he represents are to receive only about ten cents back on each dollar they lost as a result of having made payments to Lloyd, Carr for commodity options. Concerning the action before this Court, Mr. Mahony has pledged his full support and cooperation to the plaintiff, including among other things allowing the plaintiff to utilize the information he has gathered concerning the identity of Lloyd, Carr customers and the amount of money lost by each customer.[17]

■ Superiority of class treatment is appropriate in the instant action. There are approximately 4,700 putative class members and it appears that a number of the claims will be relatively small in dollar amounts as compared to the cost of pursuing this complex securities case. Concerning whether securities were sold by Lloyd, Carr, common legal and factual issues predominate over any issues affecting only individual class members. Consequently, class treatment is the fairest and most efficient method to adjudicate the securities claim brought before this Court by the plaintiff. *See Keasler v. Natural Gas Pipeline Co. of America,* 84 F.R.D. 364 (E.D.Tex. 1979).

### Controlling Person Liability

■ The Court now considers the defendants' motion for summary judgment and the plaintiff's motion for class certification with regard to controlling person liability under section 15 of the Securities Act, 15 U.S.C. § 77o, which provides:

> Every person who, by or through stock ownership, agency, or *otherwise,* or who pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock

ownership, agency, or *otherwise* controls any person liable under section 11 or 12, shall also be jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, *unless* the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

(Emphasis Added).[18] The Securities and Exchange Commission has articulated a standard for determining who is a controlling person in 17 C.F.R. § 230.405(f) (1979) which has been cited approvingly in *Pharo v. Smith,* 621 F.2d 656, 670 (5th Cir.1980):

> The term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise.

Case law has further defined "control" as the ability to exert influence, directly or indirectly, over the decision-making process of another person. *American General Insurance Co. v. Equitable General Corp.,* 493 F.Supp. 721, 751 (E.D.Va.1980), relying on *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880 (3d Cir.) *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). Even if control is demonstrated, a controlling person may defend the assertion of liability by proof that he acted without "knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." Section 15 of the Securities Act, 15 U.S.C. § 77o. The burden of establish-

Mahony against Dun & Bradstreet had been settled for approximately $2.6 million thereby negating the defendants' objection to class certification on the basis that the putative class is sufficiently represented by the actions filed by Mr. Mahony.

17. Mahony II at 3; Affidavit of Gael Mahony of Hill & Barlow, dated February 10, 1981, pp. 3–4. (Mahony I).

18. The controlling person doctrine is based not only on section 15 of the Securities Act, 15 U.S.C. § 77o, but also on section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). These are analogous provisions which should be interpreted similarly. *Pharo v. Smith,* 621 F.2d 656, 673 (5th Cir.1980).

ing control in the first instance is on the plaintiff, while the burden of establishing the "lack of knowledge" defense is on the defendants. *See G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 958 (5th Cir.1981). Therefore, the analysis of the controlling person liability proceeds in two stages. The plaintiff must first establish that the defendant is a statutory controlling person. If the plaintiff is able to make such a showing, then in order to avoid liability, the defendant must demonstrate that he meets the requirements of the "lack of knowledge" defense.

In its order of November 26, 1980, this Court addressed, among other things, defendant Gage's prior motion for summary judgment with regard to the statutory controlling person issue. At that time, the plaintiff argued that because defendant Gage as general counsel for Lloyd, Carr was frequently in contact with Lloyd, Carr management, was aware of Lloyd, Carr's disputes with administrative agencies, and had knowledge of Lloyd, Carr's unconventional sales methods as well as knowledge of certain allegations of fraud made against Lloyd, Carr, defendant Gage was a controlling person of Lloyd, Carr under the "otherwise" provision in section 15 of the Securities Act. The Court relied mainly on the uncontroverted sworn statement of Frank Post, former Lloyd, Carr staff counsel, in which he stated that Bushnell, Gage & Reizen served Lloyd, Carr in a general advisory capacity; that James Carr as president and Jim Brien as vice president, or both, would consult the law firm regarding any major decisions; that he Frank Post, as staff counsel, looked to the law firm for approval of any course of action that he took; that he was instructed to consult with Ms. Shec-

ter, Mr. Henry, or Mr. Gage before disposing of any reparations claims by unpaid customers; and that he looked to the law firm and not Lloyd, Carr principals for approval of his activities as Lloyd, Carr staff counsel. 504 F.Supp. at 350. To support his motion, defendant Gage relied on his own affidavit in which he swore that he acted as litigation counsel and that he was not in a position to control Lloyd, Carr. Based on the uncontroverted Post February 8, 1980, statement and the Gage affidavit, the Court concluded that a genuine issue of material fact remained as to whether defendant Gage actually controlled Lloyd, Carr through control of the Lloyd, Carr staff counsel and through the dependence of James Carr and Jim Brien on defendant Gage's advice. The Court, furthermore, held that whether defendant Gage had a "good faith" or "lack of knowledge" defense under the controlling persons statutes was inappropriate for summary judgment resolution because it directly involved defendant Gage's credibility.[19] *Id.*

Subsequent to the denial by the Court of defendant Gage's motion for summary judgment in November 1980, the defendants conducted extensive discovery which includes the deposition, affidavit, or sworn statement of Frank Post, James Carr, Jim Brien, Mr. Cosulich, Mr. Labus, Mr. Bushnell, Mr. Reizen, Mr. Henry, and Ms. Shecter. Based upon the record now before the Court, the defendants move for summary judgment in their favor on the ground that no genuine issue of material fact exists as to whether the defendants were controlling persons under section 15 of the Securities Act.

---

**19.** Based upon recent discovery, most specifically the deposition of Frank Post, the defendants move for summary judgment on the grounds, among others, that they did not control Lloyd, Carr through control of Frank Post because (1) they did not control Frank Post and (2) Frank Post was not a controlling person of Lloyd, Carr. The defendants' arguments are well presented and supported by direct evidence in the record. However, the plaintiff merely indicates in his August 16, 1982, statement of facts that genuine issues remain con-

cerning the control status of Frank Post. The plaintiff, does not present evidence to show that such issues remain. In fact, the plaintiff fails to respond in any way to the defendants' arguments. The movants have presented record evidence to support their contentions and the plaintiff has failed to present opposition sufficient to withstand summary judgment under Rule 56 with regard to whether the defendants controlled Lloyd, Carr through Frank Post. Consequently, the Court GRANTS the defendants' motion with regard to that issue.

First, the defendants point to the testimony of Frank Post at his deposition when he was specifically questioned about his testimony found on page 14 of his statement upon which the Court relied in denying defendant Gage's prior motion for summary judgment on the "controlling person" issue. *See* 504 F.Supp. at 350. Mr. Post admitted that he was not a member of the Lloyd, Carr "board," that he did not regularly attend the board meetings, and that he was not generally privy to conversations which may have taken place between Bushnell, Gage & Reizen and either Mr. Carr or Mr. Brien. Post Dep. at 152–53. Mr. Post admitted that he had no personal knowledge upon which to base this part of his prior testimony. Post Dep. at 153. Furthermore, Mr. Post testified that the only "major decisions" known to him on which Bushnell, Gage & Reizen was consulted dealt with matters of litigation. Post Dep. at 151–153. Mr. Post was unable to cite to even one specific occasion when Bushnell, Gage & Reizen gave advice to Lloyd, Carr on anything other than a litigated matter.

The defendants point out that Rule 56(e) of the Federal Rules of Civil Procedure provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence. Because Mr. Post has admitted that he has no personal knowledge of any business decisions on which Lloyd, Carr consulted Bushnell, Gage & Reizen, his testimony at page 14 of the sworn statement cannot be considered in opposition to the defendants' motion.

■ Second, the defendants argue that the uncontradicted testimony on personal knowledge of these defendants and of the principals or board members of Lloyd, Carr,

i.e., Mr. Carr, Mr. Brien, Mr. Cosulich, and Mr. Labus, unequivocally establishes that Bushnell, Gage & Reizen was not a controlling person of Lloyd, Carr. While the defendants swore that neither they nor the firm gave any general business, tax, commodities, or securities advice to Lloyd, Carr and that their substantive representations related entirely to matters involving litigation, Gage Aff., ¶¶ 2, 8; and Shecter Aff., ¶¶ 2, 9, they admit that the firm assisted Lloyd, Carr in a few "ministerial" matters, such as filing the necessary forms to qualify to do business in various states. The defendants' brief in support of their motion for summary judgment, at 9 n. 9. It is not disputed that the Lloyd, Carr board members, in particular James Carr, had actual control over the management of Lloyd, Carr. The members of that board uniformly swore that Bushnell, Gage & Reizen had no involvement whatsoever in the alleged fraudulent practices of Lloyd, Carr. Mr. Carr Aff., ¶ 11; Mr. Brien St., 36; Mr. Cosulich St., 37; and Mr. Labus Aff., ¶ 4. In addition, Mr. Brien, who was responsible for the day-to-day liaison with Lloyd, Carr's attorneys, states that Bushnell, Gage & Reizen's relationship with Lloyd, Carr was that of outside counsel handling matters of pending or threatened litigation. Mr. Brien St. at 24, 35. Further, Mr. Brien stated that Bushnell, Gage, & Reizen did not give, nor was it asked to give, advice on securities laws, commodities laws, or any general business law related to the sale practices and activities of Lloyd, Carr. Mr. Brien St. at 20, 24, 35; and *see* Cosulich St. at 15, 37–38; Labus Aff., ¶ 3. In view of the above direct evidence, the defendants assert that being described as "general counsel" alone is insufficient to raise a genuine of fact precluding summary judgment.[20]

20. The plaintiff objects to the consideration by the Court of the direct evidence submitted by the defendants on the basis that the sworn testimony of the "board" members and of the instant defendants lacks credibility essentially because they are all named defendants in this action. Simply because the evidence submitted is based upon testimony of named defendants does not necessarily mean that their testimony lacks credibility. *See Brown v. Ford Motor Company,* 479 F.2d 521, 523 (5th Cir.1973).

The plaintiff has failed to offer direct evidence to contradict the evidence submitted by the defendants. With respect to the affidavits of the top management of Lloyd, Carr, the plaintiff argues that they are biased and untrustworthy; however, this argument fails because the plaintiff does not show that the impact of these affidavits is helpful to Mr. Carr, Mr. Brien, Mr. Cosulich, and Mr. Labus. On the contrary, the affidavits would not help them

Simply stated, the thrust of the plaintiff's opposition to the defendants' motion for summary judgment on the controlling person issue is that Bushnell, Gage & Reizen, through its litigation activities, had absolute control over the very essence of Lloyd, Carr because Bushnell, Gage & Reizen used threats and litigation tricks to deter the authorities' efforts to shut down Lloyd, Carr. Furthermore, the plaintiff asserts that although Lloyd, Carr had been officially advised that continued operation without registration and compliance with antifraud provisions was illegal, the established policy of Lloyd, Carr under the unrestricted direction of Bushnell, Gage & Reizen was to use "litigation" as a sword to intimidate the CFTC and to allow Lloyd, Carr to continue unfettered in its illegal activities.

To support his contention, the plaintiff relies mainly on the following evidence in the record. Mr. Brien, the former vice president of Lloyd, Carr testified that by representing Lloyd, Carr in litigation activities, Bushnell, Gage, & Reizen was in effect keeping Lloyd, Carr in business because the CFTC was trying on a daily basis to shut down the operations of Lloyd, Carr. Brien II at 215–216. Mr. Post, the former staff counsel of Lloyd, Carr, testified concerning his vague recollection of a conversation he overheard with regard to legal advice given by defendant Henry: "I believe one conversation involved the cease and desist order or how to avoid one or how to stay in business or something of that nature." Post III at 125. Mr. Post further testified that it was his opinion that the purpose of filing the action against the CFTC was to obtain concessions with respect to registration or suspension of some of the litigation that the CFTC was launching. Id. at 216. Furthermore, Mr. Post testified that the complaint (which was drafted by defendant Reizen) against Mr. Rota of the Massachusetts Security Commission was filed by him in good

faith but without the intention of proceeding to a hearing—"It was filed with the intention of intimidating the Securities Commission to get them to cease their investigation." Id. at 71. In addition, Mr. Post opined that Bushnell, Gage & Reizen had knowledge of Lloyd, Carr's substantial markup in price because he heard a member of the firm (he thought it was Mr. Henry) joking about the substantial markup. Id. at 164. Mr. Post also testified that Bushnell, Gage & Reizen rendered legal advice to Lloyd, Carr with respect to the application of federal securities laws or federal commodities laws or the rules or regulations thereunder, although he could not cite a single example of such advice outside of the context of litigation. In a November 8, 1977, letter between defendant Bushnell and Mr. Carr, defendant Bushnell wrote with regard to the TRO issued by Judge Fox in Michigan: "as the Order is phrased (it) would be most probably construed by Judge Fox (as) almost any act from high pressure sales to your present substantial mark-up of the sales price of the option. As you know, the CFTC construes this Order to be applicable nationwide and they will likewise be very interested in finding violations; however, their ability to police you will be substantially less than the efforts to be made by the Michigan Attorney General. . . . it is our strongest recommendation that Lloyd, Carr & Co. immediately suspend *all* Michigan based operations until the Preliminary Injunction Hearing is resolved." Deposition Exhibit 443. In a mailgram from Bushnell, Gage & Reizen to the CFTC, the law firm criticizes the CFTC for disbursing information to the Public that Lloyd, Carr had been unlicensed since January 17, 1977, without also indicating that Lloyd, Carr challenges the CFTC's allegations. Deposition Exhibit 23. In a December 10, 1977, letter from defendant Gage to Mr. Carr, defendant Gage advised

but would help the instant defendants. Because the affidavits are consistent with and factually supportive of the assertions contained in the affidavits of the instant defendants, the Court determines that for purposes of this motion the defendants have produced sufficient

record evidence to support their contentions without resorting to the affidavits of the instant defendants. Consequently, the Court does not rely on those affidavits in ruling on the defendants' motion for summary judgment.

Mr. Carr to reveal certain financial information sought by an appointed special master. Defendant Gage explained that revealing part of the sought discovery would reduce the cost of the proceeding and would provide Lloyd, Carr with a basis for objecting to further revelation of information, although "it may not do more than delay the inevitable revelation" to the Court. Deposition Exhibit 223. In a sworn statement, Mr. Walden, a former office manager of Lloyd, Carr, stated that when he asked defendant Bushnell how long Lloyd, Carr could stay in business, defendant Bushnell responded that under the circumstances he did not see how Lloyd, Carr could continue its operations. Wathen III at 15. When questioned about Lloyd, Carr litigation activities, defendant Shecter stated that she was aware that the CFTC was attempting to prohibit Lloyd, Carr from continuing in business on the ground that Lloyd, Carr was not properly licensed. Shecter at 49. The plaintiff argues that the above record facts raise inferences sufficient to withstand the defendants' motion for summary judgment.

In their March 4, 1983, letter brief, the defendants respond that the facts concerning Bushnell, Gage & Reizen's litigation activities referred to by the plaintiff do not justify a trial to determine whether lawyers, acting as litigation counsel, can by that activity incur controlling person liability under the Securities Act. The defendants maintain that the evidence establishes that Bushnell, Gage & Reizen did nothing more than zealously represent in litigation its client, Lloyd, Carr, as demanded by Canon 7 of the Model Code of Professional Responsibilities (1979) (hereinafter CPR).[21] Furthermore, the defendants maintain that as litigation counsel they "obviously" had knowledge of the underlying issues and claims against Lloyd, Carr. In addition, the defendants maintain that as litigation counsel, they represented Lloyd, Carr in matters which, if decided adversely to their client, would unsurprisingly affect its business.

The defendants argue that there is no evidence to show that Bushnell, Gage & Reizen controlled the day-to-day operations of Lloyd, Carr or to contradict the sworn testimony of all of the Lloyd, Carr principals and the defendants that Bushnell, Gage & Reizen did not control Lloyd, Carr.

The defendants, furthermore, assert that Bushnell, Gage & Reizen had no power to "control" Lloyd, Carr but only had the lawyer's ability to make recommendations to James Carr which would be accepted or rejected. Consequently, the defendants maintain that James Carr operated Lloyd, Carr as he pleased, notwithstanding the legal advice from Bushnell, Gage & Reizen. The defendants specifically point out one instance when a temporary restraining order (TRO) was issued against Lloyd, Carr and Bushnell, Gage & Reizen vigorously advised James Carr to comply with the TRO by closing the Michigan operations. James Carr, however, responded to that advice by saying: "Hell no, I am not going to close my office!" Post III at 187. The defendants also refer the Court to the direct evidence previously submitted and relied upon in their briefs which uniformly supports the defendants' position that they acted as litigation counsel and their litigation advice was accepted or rejected upon the decision of James Carr.

 Because research has revealed no legal precedent with regard to whether and under what circumstances litigation counsel should be held liable as controlling persons under section 15 of the Securities Act, the Court herein has set forth the legal positions of the respective parties in substantial detail. While the plaintiff brings to the attention of the Court several cases discussing the duties of attorneys in the area of securities law, those cases are inapposite to the case at bar involving attorneys in their role as litigators or advocates because the cited cases involve attorneys acting only in their role as advisors in the area of securi-

---

**21.** CPR, Canon 7 generally provides that "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law."

ties. Cases involving attorneys who zealously represent the interests of their clients are distinguishable from cases involving attorneys who advise their clients how the securities laws apply to particular situations or where the attorneys prepare or assist in preparing offering circulars or opinion letters containing incorrect information, as in those cases cited by the plaintiff. *SEC v. Frank*, 388 F.2d 486 (2d Cir.1968); *SEC v. Spectrum, Ltd.*, 489 F.2d 535 (2d Cir.1973); *Felts v. National Accounting Systems Association, Inc.*, 469 F.Supp. 54 (N.D.Miss.1978). In asserting a position on behalf of his client, an advocate for the most part deals with past conduct and must take the facts as he finds them. By contrast, an attorney serving as an advisor primarily assists his client in determining courses of future conduct and relationships. While serving as an advocate, an attorney should resolve in favor of his client doubts as to the bounds of the law. In serving as an advisor, an attorney should give his professional opinion as to what the ultimate decisions of the courts would likely be as to the applicable law.[22]

While this Court has previously noted that an attorney could be found to be liable as a controlling person when, for example, the attorney is in some sense a culpable participant in the acts perpetrated by the controlled person, 504 F.Supp. at 349,[23] the Court during oral argument on February 22, 1983, stated its opinion that an attorney cannot be held to be a controlling person under the federal securities laws for vigorously performing legitimate litigation activities for his client. Unless the plaintiff shows that an attorney participated in fraud or a similarly culpable act or unless the plaintiff shows that the attorney pursued legal representation in blatant violation of the CPR, Canon 7,[24] he cannot be held to be a controlling person merely because he renders legal advice in pursuing litigation on behalf of his client. Simply because a client is legally attacked and is perhaps unlikely to prevail in court does not mean that the client is not entitled to legal representation. On the contrary, such an individual is not only entitled to but in need of zealous legal representation within the bounds of the law. This Court declines to discourage such representation.

Considering the facts and factual inferences in a reasonable light most favorable to the plaintiff, the Court concludes that no genuine issues of material fact remain as to whether the defendants were "controlling persons" of Lloyd, Carr under the Securities Act. *See Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1117 (5th Cir.1979). The plaintiff's arguments seem implicitly to assume that a law firm called "general counsel" is automatically a controlling person, but the Court does not believe such assumption is warranted. The Court focuses upon what the defendants actually did, rather than upon their title. Lloyd, Carr was controlled by the board which was composed of Mr. Carr, Mr. Brien, Mr. Consulich, and Mr. Labus. On August 3, 1977, James Carr appointed Bushnell, Gage & Reizen as counsel. 504 F.Supp. at 350. There can be no reasonable dispute, at this time, that the only major decisions upon which Bushnell, Gage & Reizen rendered legal advice to Lloyd, Carr involved litigation matters. Bushnell, Gage & Reizen represented Lloyd, Carr in the capacity of "general counsel" with respect to litigation matters only, with exception of several instances when the firm performed ministerial matters for Lloyd, Carr. The plaintiff, however, has been unable after years of discovery to present any direct evidence to contradict the uniform testimony of the Lloyd, Carr board and of the defendants that Bushnell, Gage and Reizen did not give, nor was it asked to give, advice on securities laws, commodities laws, or any general business laws related to the sale practices and to the day-to-day activities of Lloyd, Carr. As litigation counsel, the de-

---

**22.** See generally CPR, EC7-3.

**23.** *See also Felts, supra,* 469 F.Supp. 54 (N.D. Miss.1978).

**24.** See footnote 20, *supra;* and see generally CPR, DR7-101(1); 7-102(A)(1), (2), (7), and (8).

fendants knew of the charges, including fraud, against Lloyd, Carr. The evidence also shows that James Carr, former president of Lloyd, Carr, made the ultimate decisions concerning the daily operations as well as the legal posture of Lloyd, Carr. The defendants performed the role of general litigation counsel, making legal representations to Lloyd, Carr that were either accepted or rejected. When the defendants advised Mr. Carr to respect a TRO by closing the Michigan operations, Mr. Carr totally rejected the advice and proceeded as he pleased. Furthermore, it was under the direction of Lloyd, Carr management that Bushnell, Gage & Reizen prepared complaints against administrative agencies and defended Lloyd, Carr in actions by administrative agencies against Lloyd, Carr. While complaints prepared by Bushnell, Gage & Reizen against administrative agencies may have been filed with the ulterior intent to gain concessions for Lloyd, Carr, there is no evidence from which it reasonably could be inferred that Bushnell, Gage & Reizen participated in the fraudulent activities of Lloyd, Carr or represented it in blatant violation of Canon 7 of the CPR.[25] To support his position, the plaintiff has brought to the attention of the Court circumstantial evidence which he contends raises factual inferences sufficient to withstand the defendants' motions for summary judgment. While the plaintiff is entitled to the benefit of any reasonable factual inferences to be drawn from facts properly before the Court, the Court finds from the record herein that the inferences suggested by the plaintiff are unreasonable and contorted. Insofar as any weighing of inferences from record facts is permissible in determining whether the proffered inferences are reasonable, the Court considers supportive as well as contradictory evidence in the record. *See Tyler v. Vickery,* 517 F.2d 1089, 1094 (5th Cir.), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *See also American Telephone & Telegraph Co. v. Delta Communications Corp.,* 590 F.2d 100, 101–102 (5th Cir.) *cert. denied,*

444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). In order to reach the conclusions argued by the plaintiff, a fact finder would have to contort the record facts and resort to pure speculation. After profound consideration of the motions, the briefs, and the record, the Court determines that the plaintiff has failed to raise facts or inferences sufficient to preclude the defendants' motions for summary judgment on the "controlling person" issue under the Securities Act.

In that the plaintiff's only remaining claim against the instant defendants under the Securities Act is pursuant to section 15 controlling person liability and because the Court herein grants summary judgment in favor of the defendants on that claim, the Court concludes that class certification on the securities issues is inappropriate against the instant defendants. Therefore, the motion for class certification on the securities claims against these defendants is hereby DENIED.

*Commodities Exchange Act, as amended by the Commodity Futures Trading Commission Act, Claims*

The plaintiff maintains that Lloyd, Carr violated the Commodity Exchange Act, as amended, by selling interests in commodity futures options without being properly registered with the CFTC as a futures commission merchant as required by Rule 32.3 of the CFTC and by selling commodity options not preceded or accompanied by a disclosure statement meeting the requirements of Rule 32.5 of the CFTC. Moreover, the plaintiff's CFTC Act claims are based on 7 U.S.C. § 6b and 6k and 17 C.F.R. §§ 32.3, 32.5, and 32.9. In its May 14, 1981, order, the Court granted summary judgment in favor of the defendants, relying on *Rivers v. Rosenthal & Co.,* 634 F.2d 774 (5th Cir. 1980), for the proposition that no implied cause of action exists under the provisions relied upon by the plaintiff in this case.

In light of the recent decision of *New York Mercantile Exchange v. Leist,*

---

**25.** See footnote 24, *supra.*

456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), in which the Supreme Court held that an implied private right of action does exist under the CFTC Act, the plaintiff moves that the Court reconsider its May 15, 1981, order and hold that class certification is appropriate on the CFTC claims. Although acknowledging that there is no explicit controlling person liability under the CFTC Act, the plaintiff argues that secondary liability (aider and abettor liability) in commodities law is broader than aider and abettor liability in securities law and includes the concept of controlling person liability.

This Court previously entertained and granted defendant Gage's motion for summary judgment with respect to liability as a seller and as an aider and abettor under the securities laws. 504 F.Supp. at 347–48. Furthermore, this Court previously held that there is no statutory controlling person liability under the Commodity Exchange Act. *Id.* at 345.

Consistent with this Court's previous rulings and in light of the fact that the plaintiff cites no direct authority for his proposition, the Court, based upon the facts of this case, declines to expand secondary liability under the commodities laws. Consequently, while the Court herein reinstates the plaintiff's CFTC Act claims, the Court, with regard to the instant defendants, GRANTS their motion for summary judgment and therefore concludes that the CFTC Act claims against them are inappropriate for class certification.

As to whether the CFTC Act claims should be certified for class treatment with regard to the remaining defendants, the plaintiff, within ten (10) days of this order, is to submit a brief, no more than twelve (12) pages in length, explaining why those claims should be certified under Fed.R. Civ.P. 23. Specifically, the plaintiff is to show how questions of law or fact common to the members of the class predominate over any questions affecting only individual members. More specifically, the plaintiff is to explain how he intends to prove at trial the CFTC Act allegations (7 U.S.C. § 6b and 17 C.F.R. §§ 32.3, 32.5, and 32.9) without resorting to individualized proof from members of the class. The remaining defendants shall have ten (10) days from receipt of the plaintiff's supplemental brief in which to respond.

### Common Law Fraud

Concerning the remaining issues with regard to the common law fraud count, the plaintiff has abandoned his pursuit for class certification on the issue[26] and the defendants have moved for summary judgment on the grounds that there is no basis on which these defendants may be held liable, directly or indirectly, for the alleged fraud of Lloyd, Carr or Mr. Bala, a former Lloyd, Carr broker.

█ Under Georgia common law, there are five elements of fraud and deceit: (1) false representations made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. *City Dodge v. Gardner,* 232 Ga. 766, 769 n. 1, 208 S.E.2d 794 (1974). There is no proof in the record that any of the first three elements are met. Therefore, the defendants can not be held directly liable for fraud under Georgia law.

As for indirect liability under common law fraud, the Court notes that it previously held that on the facts of this case there could be no causal relationship between the actions of defendant Gage and the plaintiff's purchase of commodity options from Lloyd, Carr and, therefore, defendant Gage could not be liable as a seller under section 12 of the Securities Act or as aider and

---

26. The plaintiff in his September 1, 1981, memorandum abandons his argument in favor of class certification of the common law fraud claims:

 While many outrageous fraudulent acts were committed, there does not appear to have been any uniform consistent affirmative fraud that would allow class action treatment of the common law fraud count.

September 1, 1981, Memorandum, p. 2.

abettor of Lloyd, Carr's alleged violation of section 12. 504 F.Supp. at 346–48. In the Court's view, the previous rulings coupled with the plaintiff lack of arguments on the contrary dispose of the plaintiff's common law fraud claim. *See Hamilton Bank & Trust Co. v. Holliday,* 469 F.Supp. 1229, 1239 (N.D.Ga.1979).

Accordingly, summary judgment in favor of the defendant is GRANTED and consequently class certification is DENIED with regard to the common law fraud claims.

### Summary

In conclusion and for the reasons set forth above, the Court determines that a genuine issue remains as to whether the commodity futures options sold by Lloyd, Carr were securities under section 2(1) of the Securities Act. In addition, as for the only remaining securities law claim against the instant defendants, the Court GRANTS the instant defendants' motions for summary judgment with regard to controlling persons liability under section 15 of the Securities Act. Furthermore, as for the instant defendants, the Court GRANTS summary judgment in their favor as to the remaining claims under the CFTC Act and common law fraud. The Court, however, certifies for class treatment the federal securities law claims and directs counsel to brief further the CFTC Act claims as to the remaining defendants in this case. Consequently, the plaintiff is to proceed with this class action by complying with Fed.R.Civ.P. 23 procedures. Accordingly, within forty (40) days of the date of this order, the plaintiff is to file with the Court (1) a list of class members and their addresses, (2) a plan as to how the plaintiff will provide the class members the best notice practicable under the circumstances, and (3) a copy of the proposed notice to be sent to members of the class.